Norman KACZMAREK and Emily
Kaczmarek, Plaintiffs,

v.

BETHLEHEM STEEL CORPORATION,
Defendant and Third Party Plaintiff,

v.

OLDMAN BOILER WORKS, INC.,
Third Party Defendant.

No. 92–CV–559S.

United States District Court,
W.D. New York.

April 28, 1995.

Daniel J. Henry, Hamburg, NY, for plaintiffs.

Frank G. Godson, Smith, Murphy & Schoepperle, Buffalo, NY, for third-party defendant.

Alan M. Wishnoff, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, for defendant and third-party plaintiff.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Presently before this Court is the Bethlehem Steel Corporation's ("defendant") motion for summary judgment pursuant to Fed. R.Civ.P. 56.

Norman E. Kaczmarek ("plaintiff") and his wife Emily Kaczmarek initiated this action based upon injuries plaintiff suffered at a plant owned by defendant while he was employed by Oldman Boiler Works which had contracted with defendant to perform certain repair work. The complaint asserts that defendant is liable under a theory of common law negligence as well as for violations of Labor Law §§ 200, 240, and 241(6). In addition, plaintiff also asserts a separate claim based on defendant's alleged violation of regulations promulgated pursuant to the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq. ("OSHA"). Defendant's present motion seeks dismissal of all claims.

In support of its motion for summary judgment, defendant has submitted the affidavit of defense counsel, Alan Wishnoff, Esq., with exhibits ("Wishnoff Aff."), a statement of material facts not in dispute, ("D.Statement"), a memorandum of law ("D.Memo"), a reply affidavit from defense counsel ("Wishnoff Reply"), a reply memorandum of law ("D.Reply"), and a supplemental memorandum of law with exhibits ("D.Supp."). In opposition

to the motion, plaintiff has submitted the affidavit of plaintiff's counsel, Daniel J. Henry, Esq., with exhibits ("Henry Aff."), a statement of material facts in dispute ("P.Statement"), a memorandum of law ("P.Memo"), and a supplemental affidavit from plaintiff's counsel ("Henry Supp."). To the extent the exhibits attached to the parties submissions are excerpts from deposition transcripts, they shall be directly referenced as such. In addition to these submissions, this Court has also considered the arguments of counsel made on the record at the time of their appearance on October 14, 1994. In large part, many of these arguments were incorporated into the supplemental submissions received by the Court.

Having considered the parties' respective arguments and the facts documented in the record, this Court shall grant defendant's motion for summary judgment for the reasons set forth below.

### FACTS

The majority of the facts underlying the present action are not disputed by counsel. Instead, counsel primarily dispute the legal significance of these facts.

On April 22, 1991, Purchase Order 1250–0422–3005N was issued by defendant to Oldman Boiler Works ("OBW") for the repair of pipelines in a pump house at defendant's manufacturing plant in Lackawanna, New York. (D.Statement ¶ 3;[1] Wishnoff Aff. Ex. F.) The Purchase Order incorporated by reference the provisions of contract X500–103–9578–K ("Contract") previously entered into by OBW and defendant. (Id.)

Both the Purchase Order and Contract contain provisions relevant to the issues raised by the present motion. First, the

---

1. In pertinent part, Local Rule 56 of the Local Rules of Civil Procedure for the Western District of New York provides:

    In any motion for summary judgment ... there shall be annexed to the notice of motion a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried. The papers opposing a motion for summary judgment shall include a separate, short, and concise statement of the material facts as to which it is contended that there exists a genu-

    ine issue to be tried. *All material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party.*
    (emphasis added). Pursuant to the rule, this Court shall cite those paragraphs of defendant's statement of undisputed facts which have been conclusively established insofar as they have not been controverted by plaintiff's Local Rule 56 statement in response.

Purchase Order provides that OBW would "furnish labor, material, equipment and supervision" for the oversoling and undersoling of two long nozzles. (Wishnoff Aff. Ex. F.) Moreover, OBW was "to have the capability and be trained in the use of breathing equipment and . . . supply their own breathing air and equipment." (*Id.*; D.Statement ¶ 4.) Furthermore, by way of the Contract OBW, the "Contractor," and defendant, the "Company," agreed as follows:

FIRST. WORK CONTRACTED FOR:— The Contractor agrees to perform all the work (including the furnishing of all materials, tools, equipment, insurance, labor and supervision required therefor and all delivery, unloading, storage, construction and installation incidental thereto) shown on or called for by the plans and specifications designated as follows.

\*   \*   \*   \*   \*   \*

SEVENTH. RESPONSIBILITY AND INSURANCE:—The Contractor shall be solely responsible for the protection of the Work and of all equipment and materials to be used therein until final completion of the Work and shall promptly at its own expense repair any damage to the same, however caused. The Contractor shall properly guard the Work in order to prevent any person or persons being injured by it or by the condition of the Site and shall comply with the provisions of all applicable laws, ordinances, rules and regulations of any public body relating to the protection of or safe performance of the Work . . .

The Company assumes no obligation to furnish to the Contractor any tools, equipment or materials for the performance of the Work except as may be expressly provided herein.

\*   \*   \*   \*   \*   \*

SEVENTEENTH. INVESTIGATION BY CONTRACTOR:—The Contractor hereby represents that prior to the execution of this Agreement it has visited the Site and that opportunity has been given to it for, and it has made, any and all investigations desired relative to the condition of the Site and the character of the Work and the condition and circumstances under which the Work must be performed, and, furthermore, that it has examined and clearly understands the plans and every clause and section of this Agreement and of the specifications hereto attached.

(*Id.*; D.Statement ¶ 5.)

Representatives of defendant and OBW met and/or discussed the project several times prior to and after commencing work. First, prior to the issuance of the Purchase Order pre-bid meetings were held at which outside contractors were invited to defendant's facility and the nature of the work to be performed was described and assessed. (Michalski Dep. at p. 20.) Anthony Michalski, Bethlehem's Mechanical Division Foreman who was the contact person if OBW had any questions regarding the repair project, testified that safety precautions were a "big issue" at these meetings and prospective contractors were directed to a reference chart that provided general guidelines for the types of breathing apparatus necessary for the job. (*Id.* at pp. 20, 39.) The discussions about safety and the necessity for breathing apparatus at the pre-bid meetings were likewise acknowledged by Edward Berger, the president of OBW. (Berger Dep. at p. 108.) Second, Michalski testified that prospective bidders would have been alerted to the presence of ammonia gas when they were given "walk throughs" of the work site and Berger acknowledged that at both the pre-bid meeting and again at the job site just before OBW began work defendant informed OBW that the job would involve exposure to ammonia fumes.[2] (Michalski Aff. at pp. 21–22; Berger at pp. 108–09; Harmon Dep. at p. 22.) Third, Michalski testified that once the contract was awarded to OBW, a safety meeting was held prior to the commencement of work on the project. (*Id.* at p. 26.)

---

2. Despite having been alerted to the presence of ammonia gas, Berger, on behalf of OBW, did not request a Material Safety Data Sheet (Wishnoff Aff. Ex. F (page of contract expressly inserted for purposes of complying with the requirements of 29 C.F.R. 1910.1200(e)(2)(iii)) concerning the chemicals defendant had indicated would be present in the work site area. (Berger Dep. at p. 109.)

OBW began work in a pump house at defendant's plant in late April 1991 patching a pipeline that was in need of repair. (Kaczmarek Dep. at pp. 56, 111; Michalski Dep. at p. 32.) The pipeline contained a liquid referred to as "circulating liquor" which consisted of 95% water and 5% by-products of the coke making process which included ammonia. (D.Statement ¶¶ 6–7.) Ammonia constituted, by weight, approximately one percent of circulating liquor. (Id.; Michalski Dep. at pp. 9–10; Philips Dep. at p. 17.) Although OBW brought several types of breathing apparatus to the work site, plaintiff did not use an air-fed respirator because another employee was using the only one that would fit over his welding hood. (Kaczmarek Dep. at pp. 64, 75.) However, it is clear that once plaintiff and other OBW workers were at the job cite they knew that ammonia fumes were present. (Harmon Dep. at pp. 22, 31, Kaczmarek Dep. at pp. 49, 83 [3]; Michalski Dep. at p. 40.)

Plaintiff worked three full eight hour days repairing the pipeline. On the first day the severity of the smell from the fumes led plaintiff to complain to his foreman, Terrence Harmon, that better breathing equipment was needed. (Kaczmarek Dep. at pp. 49–50.) Despite the fact that OBW did not produce such equipment, plaintiff continued to work. For the first day and half of the project, plaintiff worked on a portion of the pipeline which was outside the pump house. The work then moved inside and plaintiff again complained to Harmon that better breathing equipment was needed. (Id. at 59.) Harmon tried to get approval to postpone the job, but that request was denied. (Id. at p. 60.) With about two hours remaining on the third day, the requested breathing equipment arrived. (Id. at p. 62.)

Plaintiff was allegedly unable to return to work after finishing on the third day because of injuries suffered as a result of exposure to ammonia gas.[4] This lawsuit was commenced to recover damages for those alleged injuries.

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment is warranted where "the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). A fact is "material" if it "might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Under the Rule, a party moving for summary judgment can meet its burden either by producing evidence showing the absence of a genuine issue of material fact, or by pointing out to the court that there is an absence of evidence supporting one or more essential elements of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Furthermore, Rule 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as other-

---

3. Although plaintiff initially denied he knew ammonia was present (Kaczmarek Dep. at p. 81), he contradicted himself on this point. First, plaintiff testified that "you couldn't believe the smell" (Id. at p. 49) and that he had complained to his foreman that someone would get hurt without better breathing equipment (Id. at p. 132). Moreover, plaintiff admitted that Terrence Harmon, another OBW employee working at the site, told him that the smell was caused by ammonia fumes. (Id. at p. 83.)

4. The nature and extent of plaintiff's injuries are not addressed in either parties' submissions on the present summary judgment motion. In fact, the record for the present motion is devoid of any evidence providing a description of plaintiff's alleged injuries or supporting an inference that such injuries were caused by the exposure to ammonia fumes.

wise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant*, 923 F.2d at 982. The function of the court is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. However, a summary judgment motion will not be defeated merely on the basis of a "metaphysical doubt" about the facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), "or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. In other words, the nonmoving party must come forward with significant probative evidence in support of its complaint. *See Capital Imaging Assocs., P.C. v. Mohawk Valley Medical Assocs.*, 996 F.2d 537, 542 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993).

## B. *Plaintiff's Claim under Labor Law § 240(1)*

By way of a letter to defendant's counsel as well as the supplemental affidavit of his counsel, plaintiff has agreed that his claim under Labor Law § 240(1) should be dismissed. (Henry Supp. ¶ 5; Wishnoff Aff. Ex. E.) Accordingly, this Court shall direct that plaintiff's cause of action premised on this statutory provision be dismissed.

## C. *Plaintiffs' Labor Law § 200(1) and Common Law Negligence Claims*

Plaintiff asserts claims against defendant under Labor Law § 200(1) as well as for common law negligence. Labor Law § 200(1) provides

All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded and lighted as to provide reasonable and adequate protection to all such persons.

This statute is merely a codification of the common-law duty of owners and contractors to furnish a safe work place. *Lombardi v. Stout*, 80 N.Y.2d 290, 590 N.Y.S.2d 55, 57, 604 N.E.2d 117, 119 (1992). Because both common law negligence and § 200(1) liability are premised on the same underlying theories, this Court shall simultaneously consider these claims by way of a single analysis. *See Comes v. New York State Elec. and Gas Corp.*, 189 A.D.2d 945, 592 N.Y.S.2d 478 (3rd Dep't 1993) (simultaneously analyzing claims premised on § 200(1) and common law negligence), *aff'd*, 82 N.Y.2d 876, 609 N.Y.S.2d 168, 631 N.E.2d 110 (1993); *Karaktin v. Gordon Hillside Corp.*, 143 A.D.2d 637, 532 N.Y.S.2d 891, 892 (2d Dep't 1988) ("[a]n action premised on Labor Law § 200 is premised on negligence"); *see also Lane v. New York State Electric & Gas Corp.*, 18 F.3d 172, 179 (2d Cir.1994) (citing *Karaktin* as properly supporting district court's dismissal of plaintiff's claim under § 200(1)).

Liability under a theory of common law negligence or § 200(1) will attach to a landowner under the safe work place doctrine for incidents which occur in areas over which the owner maintains control. *Bidetto v. New York City Housing Authority*, 25 N.Y.2d 848, 303 N.Y.S.2d 695, 250 N.E.2d 735 (1969). It is well settled, however, that "the duty to provide a safe place to work is not breached when the injury arises out of a defect in the subcontractor's own plant, tools and methods, or through negligent acts of the subcontractor occurring as a detail of the work." *Persichilli v. Triborough Bridge and Tunnel Authority*, 16 N.Y.2d 136, 262 N.Y.S.2d 476, 480, 209 N.E.2d 802, 805 (1965). Recovery against the owner or general contractor may be had where a worker's

injuries arise out of alleged defects or dangers arising from a subcontractor's methods or materials only if it is shown that the party to be charged "exercised the requisite degree of supervision and control over the portion of the work that led to his injury." *Ross v. Curtis–Palmer Hydro–Elec. Co.,* 81 N.Y.2d 494, 601 N.Y.S.2d 49, 55–56, 618 N.E.2d 82, 89 (1993); *Moore v. Charles T. Wills, Inc.,* 250 N.Y. 426, 428–29, 165 N.E. 835 (1929) ("a general contractor [or property owner] is not responsible for the negligent acts of his subcontractor" and the mere fact that a property owner retains some limited power of general supervision "for the purpose of seeing that the work was being properly done by the subcontractor, according to the plans and specifications, [does] not make it liable for the independent act of the subcontractor.") Thus, as an owner of the property where plaintiff was allegedly injured, defendant Bethlehem may be liable if its own negligence allowed an unsafe work place to cause plaintiff's injury or it exercised the requisite degree of control and direction over the work of the contractor whose negligence did cause the injury. This statement of the test for assessing landowner liability to injured workers is supported by a number of other decisions by the New York Court of Appeals. *Comes v. New York State Electric and Gas Corp.,* 82 N.Y.2d 876, 609 N.Y.S.2d 168, 631 N.E.2d 110 (1993); *Lombardi v. Stout,* 590 N.Y.S.2d 55, 604 N.E.2d 117; *Russin v.*

*Louis N. Picciano & Son,* 54 N.Y.2d 311, 445 N.Y.S.2d 127, 429 N.E.2d 805 (1981); *Allen v. Cloutier Construction Corp.,* 44 N.Y.2d 290, 405 N.Y.S.2d 630, 376 N.E.2d 1276 (1978); *Rusin v. Jackson Heights Shopping Center, Inc.,* 27 N.Y.2d 103, 313 N.Y.S.2d 715, 261 N.E.2d 635 (1970).[5]

This Court first considers whether defendant may be liable under the "safe work place doctrine." Under this rule, defendant may be liable if it had authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition. *Russin v. Louis N. Picciano & Son,* 445 N.Y.S.2d at 129, 429 N.E.2d at 806–07; *see also Karian v. Anchor Motor Freight, Inc.,* 144 A.D.2d 777, 535 N.Y.S.2d 175, 177 (3rd Dep't 1988) ("[t]he duty imposed upon [a property owner] is to provide a safe place for workers, and, as a precondition to impose liability for violation of that duty, a party charged must have authority to control the activity bringing about the injury in order to enable it to avoid the injury or correct an unsafe condition"). In this case, plaintiff offers a series of proposed rationales as to why defendant should be liable for failing to provide a safe work place. For example, plaintiff asserts that defendant may be held liable because it could have shut down the pipelines containing the circulating liquor, but decided against such a measure. (P.Memo at pp. 11–

---

**5.** Two Appellate Divisions of the New York State Supreme Court have rendered decisions which set forth distinctly different formulations of this test. Specifically, both Second and Third Departments have held that a landowner may be liable to an injured worker *"only when the injuries were sustained as the result of an actual dangerous condition at the work site, rather than as the result of the manner in which the work was performed,* and then only if the owner exercised supervision and control over the work performed at the site or had actual or constructive notice of the unsafe condition causing the accident." *Seaman v. A.B. Chance Co.,* 197 A.D.2d 612, 602 N.Y.S.2d 693, 694 (2nd Dep't 1993) (emphasis added and citations omitted), *appeal dismissed without op.,* 83 N.Y.2d 847, 612 N.Y.S.2d 110, 634 N.E.2d 606 (1994); *Whitaker v. Norman,* 146 A.D.2d 938, 536 N.Y.S.2d 916, 918 (3rd Dep't 1989) (same), *aff'd,* 75 N.Y.2d 779, 552 N.Y.S.2d 86, 551 N.E.2d 579 (1989). Such a formulation of the rule would bar recovery against a landowner whenever a plaintiff's injuries resulted from a subcontractor's manner or method of

performing a job. This rule is clearly contrary to the rulings of the New York Court of Appeals which recognize that landowner liability may be premised on either an unsafe work site or a subcontractor's manner and methods if the precondition that the landowner have "authority to control the activity bringing about the injury" is satisfied. *Russin v. Picciano & Son,* 445 N.Y.S.2d at 129, 429 N.E.2d at 806–07; *see also Ross v. Curtis–Palmer Hydro–Elec. Co.,* 601 N.Y.S.2d at 55, 618 N.E.2d at 88 (holding that where a worker's injuries "arise[ ] out of alleged defects or dangers arising from a subcontractor's methods or materials, recovery against the owner or general contractor [may] be had [if] it is shown that the party to be charged exercised some supervisory control over the operation"). Accordingly, regardless of whether this inconsistency in the cited decisions is the result of mere imprecision or a conscious decision to effect an evolution of the law, this Court shall apply the test for liability repeatedly recognized by New York's highest court previously set forth.

12.) Similarly, plaintiff argues that defendant may be held liable because it "had actual knowledge or, at least, constructive knowledge of the hazardous condition in the pump house." (Henry Supp. at p. 3.)

■ ██ Plaintiff's arguments must be considered in light of two exceptions to the safe work place doctrine recognized by New York courts. First, the New York Court of Appeals has held that the safe work place doctrine does not extend to provide a cause of action for "hazards which are part of or inherent in the very work which the contractor is to perform or where the workmen are engaged for the specific purpose of repairing the defect." *Gasper v. Ford Motor Co.*, 13 N.Y.2d 104, 242 N.Y.S.2d 205, 208–09, 192 N.E.2d 163, 166 (1963); *see also McCullum v. Barrington Co.*, 192 A.D.2d 489, 597 N.Y.S.2d 295, 296 (1st Dep't 1993) ("no responsibility rests upon an owner of real property to one hurt through a dangerous condition which he has undertaken to fix" (internal quotation omitted)). As a second exception, a landowner has no duty "to secure the safety of his servant against a condition or even defects, risks or dangers that may be readily observed by the reasonable use of the senses, having in view the age, intelligence and experience of the servant." *Stephens v. Tucker*, 184 A.D.2d 828, 584 N.Y.S.2d 667, 669 (3d Dep't 1992) (internal quotation omitted). Both of these rules bar plaintiff from recovering on any type of unsafe work place theory.

The Purchase Order and Contract reflect that OBW was to have the necessary expertise and provide the necessary breathing equipment to its workers so as to be able to perform the repair work under the conditions which plaintiff complains were the cause of his injuries, i.e. in the presence of noxious fumes. In other words, defendant entered an agreement with OBW that allowed defendant to keep its pipeline up and running while repairs were made. In a case involving a similar contract provision and a worker who was also injured as the result of exposure to noxious gas, the New York Court of Appeals found that the property owner had no duty to provide the contractor's workers with the equipment necessary to do a job and

noted that "even without th[e] express provision [requiring the contractor to provide the necessary equipment], it would seem clear that it was [the contractor's] responsibility to furnish the proper supplies and materials to complete the job which it had contracted to do." *Persichilli v. Triborough Bridge and Tunnel Authority*, 262 N.Y.S.2d at 481, 209 N.E.2d at 805–06. Furthermore, contrary to plaintiff's conclusory and unsupported arguments, there is no issue of fact as to whether the presence of ammonia was readily observable by the reasonable use of one's senses. It is undisputed that the strong smell of ammonia was immediately noticed by plaintiff and that plaintiff's concern regarding the severity of the fumes led him to repeatedly complain to his foreman that better breathing equipment was necessary. Moreover, Berger's deposition testimony reflects that OBW was aware, prior to commencing work, that the repair job OBW contracted to perform involved exposure to ammonia fumes and that its workers would need appropriate breathing equipment. In light of the undisputed facts, this Court finds that defendant may not be held liable merely because (1) it had actual knowledge that ammonia fumes were present in the work site; (2) it could have shut down its pipeline but chose not to; or (3) it failed to provide appropriate breathing equipment or inspect that being used by OBW's employees.

This Court now turns to consider whether the facts documented in the record are sufficient to give rise to a triable issue as to whether defendant exercised the requisite degree of supervisory control over the repair project performed by OBW that it may be held liable. In his supplemental submission, plaintiff identified the following facts in support of his contention that defendant exercised supervisory control over the operation: (1) that Bethlehem employees worked on the same pipeline assisting to control the leaks by applying "duct tape" patches; (2) Bethlehem instructed OBW concerning the repair project as far as the time frame for the project and the materials to be used; (3) a Bethlehem employee was designated to answer questions OBW employees might have regarding the repair of the pipeline; (4) Bethlehem instructed OBW where to set up

their equipment; (5) a Bethlehem representative conducted walk through inspections of the work site; and (6) Bethlehem provided protective creams, rubber gloves, fire blankets, patch material to be welded to the pipeline, and portable man fans for air circulation. (Henry Supp. at ¶¶ 2–4.) Plaintiff further notes that during one of the walk through inspections, Michalski advised that plaintiff should be wearing a respirator. (*Id.* at ¶ 4(C).)

█ On the other hand, the language of the Contract and Purchase Order expressly placed responsibility for the project on OBW. In particular, the Purchase Order provided that OBW would "furnish labor, material, equipment and supervision" necessary to repair the pipeline and that it would also "have the capability and be trained in the use of breathing equipment and must supply their own breathing air and equipment." (Wishnoff Aff. Ex. F.) While defendant could be liable despite these express provisions of the Purchase Order and the Contract if it nevertheless assumed the responsibility to supervise and control the work being performed by OBW, *see Persichilli v. Triborough Bridge and Tunnel Authority*, 262 N.Y.S.2d at 481 n. *, 209 N.E.2d at 806 n. *, the facts in the record do not allow for a reasonable inference that defendant undertook such responsibility. There is no dispute that OBW was aware of its responsibility to provide the breathing equipment necessary for the job and that all breathing equipment used by its employees was supplied by OBW rather than defendant. (Berger Dep. at pp. 110–11; Harmon Dep. pp. 14–15, 34; Philips Dep. at p. 43.) Further, Berger, OBW's president, testified that he was responsible for instructing the OBW crew on how the job was to be performed. (Berger Dep. at pp. 100–01.) The only other person who directed OBW's work force was Terry Harmon, OBW's lead man for the job, and Harmon testified that although a Bethlehem representative conducted daily walk throughs to check on the work progress neither he nor any other OBW employees received instructions from Bethlehem representatives on how the work was to be performed. (Harmon Dep. at pp. 11–14; Kaczmarek Dep. at pp. 62, 88–90.) Viewing the totality of the facts documented in the record in a light most favorable to plaintiff, this Court finds that there is no basis for a reasonable inference that defendant exercised the requisite degree of supervision and control over the project that it may be held liable.

This conclusion is supported by the decision of the Appellate Division, Third Department in *Tambasco v. Norton Co.*, 207 A.D.2d 618, 615 N.Y.S.2d 539 (3rd Dep't 1994), *appeal dismissed without op.*, 85 N.Y.2d 857, 624 N.Y.S.2d 375, 648 N.E.2d 795 (1995). In pertinent part, the *Tambasco* court commented as follows:

> The evidence before use does not establish that Norton[, the property owner,] exercised the requisite supervision and control to be subject to the provisions of Labor Law § 200 or common-law negligence. Both Carl Conklin, an engineer working for Norton at the time of the accident, and John McGaughnea, Norton's manager of industrial relations, testified that Hallamore, [the contractor who was plaintiff's employer,] was hired as a specialty contractor to move machinery and equipment and that only Hallamore instructed its employees concerning the manner in which the work should be performed. Hallamore provided its own equipment, including the subject forklift. Despite Conklin's testimony that he was at the worksite approximately twice a week, his duties were limited to the coordination of subcontractors concerning scheduling, completion of work orders and paying invoices.
>
> Although the terms of the contract evidenced that Norton retained a contractual right to oversee the work of Hallamore and demand adherence to safety standards, including the right to discharge employees for noncompliance, we do not find that the retention of these general supervisory powers creates a question of fact sufficient to defeat summary judgment. Such retention "is insufficient to establish control so as to make a general contractor liable in negligence for the actions of a subcontractor" ... when no act of negligence on the part of the general contractor has been alleged. Moreover, we note that pursuant to such contract, Hallamore was

to furnish all equipment for its own work and was responsible for the implementation of all safety precautions.... Hence, we find that Norton's activities do not "render it actively negligent inasmuch as this sort of activity does not bespeak supervision of the kind which would render a property owner liable at common law for the injuries sustained by plaintiff at the worksite."

*Id.*, 615 N.Y.S.2d at 541–42 (citations omitted). Much like *Tambasco,* the facts identified by plaintiff here reflect that defendant merely assumed a general oversight role with respect to the repair project and did not assume the requisite degree of supervision and control necessary to give rise to liability. *See also Moore v. Charles T. Wills,* 250 N.Y. at 429, 165 N.E. 835 ("The fact that the general contractor retained some limited power of general supervision for the purpose of seeing that the work was being properly done by the subcontractor, according to the plans and specifications, did not make it liable for the independent negligent act of the subcontractor").

Finally, the mere fact that during a walk through inspection a Bethlehem representative indicated that plaintiff should be wearing a respirator does not provide a basis for finding defendant liable. To support this argument, plaintiff relies on a line of case law in the Fourth Department of New York's Appellate Division, including *Nagel v. Metzger,* 103 A.D.2d 1, 478 N.Y.S.2d 737 (4th Dep't 1984), which held that a property owner may be held liable for a worker's injuries where the owner merely has actual or constructive notice of the unsafe manner in which the work is being performed. (P.Memo at p. 7.) However, when recently presented with the opportunity to adopt such a rule the New York Court of Appeals expressly refused to do so. *Comes v. New York State Electric and Gas Corp.,* 609 N.Y.S.2d at 169, 631 N.E.2d at 111. Pursuant to *Comes,* this Court finds that it would be improper to allow plaintiff to premise a claim against defendant solely because it may have had actual knowledge that the manner and method of OBW's repair project was potentially unsafe, i.e. requiring welders to work without better breathing equipment.

In sum, this Court finds that plaintiff has failed to raise a triable issue of fact as to whether defendant may be held liable under Labor Law § 200(1) or the common law and, accordingly, defendant is entitled to summary judgment dismissing these claims.

### D. *Plaintiff's Labor Law § 241(6) Claim*

██ Labor Law § 241(6) states

All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and owners and contractors and their agents for such work ... shall comply therewith.

This statute imposes a nondelegable duty upon owners and contractors, regardless of their control or supervision at a worksite. *Adkins v. Trezins,* 920 F.2d 164, 166 (2d Cir.1990); *Ross v. Curtis–Palmer Hydro–Electric Co.,* 601 N.Y.S.2d at 52, 618 N.E.2d at 85.

██ In his initial response to defendant's motion for summary judgment, plaintiff expressly asserted a generalized violation of § 241(6) rather than allege any regulations which were believed to have been violated. (P.Memo at pp. 9–10).) This argument must be rejected.

In contrast to the first five subdivisions of section 241, in which the Legislature set out specific safeguards on its own, subdivision 6 does no more than broadly provide that the owner and contractor see to it that the area where the work is to be performed is "so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety." This language which does not in terms provide how these ends are to be met, is, ... but a reiteration of common law standards the implementation of which is left to a subordinate body, the Board of Standards and Appeals

*Long v. Forest–Fehlhaber,* 55 N.Y.2d 154, 448 N.Y.S.2d 132, 135, 433 N.E.2d 115, 118 (1982). Section 241(6) is not a self-executing statute under which a plaintiff can proceed on a bear allegation that the statute itself has been violated. *Gregory v. General Electric Co.,* 131 A.D.2d 967, 516 N.Y.S.2d 549, 551 (3rd Dep't 1987). Instead, in the wake of the New York Court of Appeals decision in *Ross,* it is well established that to ward off a motion for summary judgment a plaintiff proceeding under § 241(6) must adequately allege a defendant has violated one of the implementing regulations set forth by the Industrial Board of Appeals. *Id.,* 601 N.Y.S.2d at 53, 618 N.E.2d at 86; *Ares v. State,* 80 N.Y.2d 959, 590 N.Y.S.2d 874, 605 N.E.2d 361 (1992); *Robinson v. City of New York,* —— A.D.2d ——, 622 N.Y.S.2d 28 (1st Dep't 1995); *Nunnenkamp v. Bay Point Assocs.,* —— A.D.2d ——, 622 N.Y.S.2d 592 (2nd Dep't 1995); *DeMattia v. Van Westerhaut Mola Social and Sport Club,* 204 A.D.2d 594, 612 N.Y.S.2d 196, 198 (2nd Dep't 1994); *Lawyer v. Rotterdam Ventures,* 204 A.D.2d 878, 612 N.Y.S.2d 682 (3rd Dep't 1994), *appeal dismissed without op.,* 84 N.Y.2d 864, 618 N.Y.S.2d 8, 642 N.E.2d 327 (1994); *see also Leon v. J & M Peppe Realty Corp.,* 190 A.D.2d 400, 596 N.Y.S.2d 380, 384–85 (1st Dep't 1993) (noting contrary position taken by the First and Fourth Departments prior to the Court of Appeals decision in *Ross* ). Therefore, plaintiff's claim pursuant to § 241(6), as set forth in the initial response to defendant's motion for summary judgment, is meritless.

Following oral argument on the motion, this Court granted the parties' leave to clarify their arguments by way of supplemental submissions. The discussions during oral argument apparently called to plaintiff's counsel's attention the problem with asserting a claim under § 241(6) without specifying any regulations alleged to have been violated. By way of his supplemental submission, he has now provided a rambling list of regulations which, for the first time, plaintiff alleges support a cause of action pursuant to § 241(6). (Henry Supp. at ¶¶ 6–13.) In its

reply memorandum and at oral argument, defendant objected to plaintiff's reliance on these regulations asserting that such arguments were not raised in a timely fashion. (D.Reply at p. 9.) This Court agrees with defendant, but shall nevertheless address the substance of plaintiff's arguments since they are, in any event, without merit.

■ This Court first considers plaintiff's claims under § 241(6) premised on 12 NYCRR parts 12 and 18. (Henry Supp. at ¶¶ 7–13.) A cause of action pursuant to § 241(6) must be premised on a violation of 12 NYCRR part 23, the implementing regulations which were promulgated pursuant to the statute. *Knudsen v. Pentzien, Inc.,* 209 A.D.2d 909, 619 N.Y.S.2d 192, 194 (3rd Dep't 1994); *Lawyer v. Rotterdam Ventures,* 612 N.Y.S.2d 682; *Brogan v. International Business Machs. Corp.,* 157 A.D.2d 76, 555 N.Y.S.2d 895, 898 (3d Dep't 1990); *Simon v. Schenectady N. Congregation of Jehovah's Witnesses,* 132 A.D.2d 313, 522 N.Y.S.2d 343, 346 (3rd Dep't 1987); *DaBolt v. Bethlehem Steel Corp.,* 92 A.D.2d 70, 459 N.Y.S.2d 503, 505–06 (4th Dep't 1983). Thus, while violation of the regulations under parts 12 and 18 could constitute "some evidence of negligence under Labor Law § 200 and the common law if the violation was a substantial factor in bringing about the occurrence" of the injury,[6] *Landry v. General Motors Corp.,* 210 A.D.2d 898, 898, 621 N.Y.S.2d 255, 256 (4th Dep't 1994), such a violation would not support a cause of action pursuant to § 241(6). *See Nichols v. Deer Run Investors, L.P.,* 204 A.D.2d 929, 612 N.Y.S.2d 691, 693–94 (3rd Dep't 1994) (plaintiff must demonstrate violation of an explicit rule or regulation which would give rise to a nondelegable duty under § 241(6)).

■ Furthermore, this Court notes that although 12 NYCRR 23–1.7(g) provides that parts 12 and 18 may be incorporated by reference into part 23 under certain limited circumstances, *see Pellescki v. City of Rochester,* 198 A.D.2d 762, 605 N.Y.S.2d 692, 694 (4th Dep't 1993) (recognizing that other regu-

---

**6.** Even taking the alleged violations of these regulations into account, this Court finds, as previously set forth, that plaintiff has failed to demonstrate defendant may be held liable under the common law or Labor Law § 200.

lations may be incorporated into part 23 by reference), *lv. denied,* 83 N.Y.2d 752, 611 N.Y.S.2d 134, 633 N.E.2d 489 (1994), such circumstances are not present in this case. Specifically, rule 23–1.7(g) provides for incorporation where dangerous air contaminants are present in "the atmosphere of any unventilated confined area." "Unventilated confined area" is not a defined term in the regulations and, as such, its meaning must be construed in light of the regulations as a whole and " 'according to the ordinary and plain sense of its words.' " *Violette v. Armonk Associates, L.P.,* 849 F.Supp. 923, 928 (S.D.N.Y.1994) (quoting *Rodriguez v. Joseph,* 149 A.D.2d 14, 544 N.Y.S.2d 592, 594 (1st Dep't 1989)). Applying this rule, this Court finds that the pump house where plaintiff worked does not fall within such a classification as it is undisputed that it was a room sixty feet by forty feet with high ceilings, had large doors opened and both ends, and was ventilated by two large fans. (D.Reply at pp. 12–13); *see also* 12 NYCRR 12–1.3(f) (defining "confined space" for purposes of part 12 which is discussed *infra* ).

In any event, this Court has reviewed the regulations found in parts 12 and 18 relied on by plaintiff and finds that there is no triable issue of fact as to whether defendant violated any of these provisions. First, many of the sections cited by plaintiff are merely general background or definitional provisions. 12 NYCRR 12–1.1, 12–1.2, 12–1.3. Second, rule 12.1–4 is inapplicable as it addresses processes or operations which necessarily give rise to or produce air contaminants whereas the present case involves a repair project undertaken to prevent such contamination from occurring. Third, the record does not support a violation of rule 12–1.5(a) which provides that "[p]ersonal respiratory protective equipment shall not be used in lieu of other control methods, *except* . . . in the repair . . . of equipment." (emphasis added). Moreover, while rule 12–1.5(a)(2) provides that "[p]ersonal respiratory protective equipment shall be of a type approved by the board for the particular class of substance or substances constituting the air contaminant," plaintiff has offered no evidence the respiratory equipment he was provided was not of a type approved by the Board. Further, plaintiff's

reference to rule 12–1.5(d) which requires "Emergency flushing facilities" is baseless as he fails to set forth how that section is of any relevance to this case. Fourth, plaintiff's reliance on rule 12–1.6 is unavailing insofar as there is no evidence in the record to establish that fumes present in the pump house constituted "dangerous air contaminants" as defined by 12 NYCRR 12–1.3(h). Further, even assuming the presence of such contaminants, there is no evidence in the record that the requirements of this provision were violated. Instead, plaintiff relies on the conclusory and unsupported assertion that this rule required a ventilation and/or exhaust system in the pumphouse that would have eliminated any contaminated air which was present. (Henry Supp. ¶ 11.) Fifth, rule 12–1.9 is inapplicable because it relates to the "Entering of confined spaces" which are defined as "[a] tank, vault *or similar enclosed structure or space with restricted means of egress,* such as a man hole or trap door . . . ." 12 NYCRR 12–1.3(f) (emphasis added). It is undisputed in this case that plaintiff worked either outside or in a pump house which had large "garage type" doors and ventilator fans. Sixth, plaintiff has failed to specify how rules 12–1.10 and 12–1.11 were violated or how any possible violation of those provisions was the proximate cause of his alleged injuries. Finally, plaintiff's reliance on 12 NYCRR part 18 is misplaced because the "Application" provision, section 18.1, provides that part 18 only establishes standards in regard to the construction and maintenance of exhaust systems required by the Labor Law or Industrial Code and plaintiff has failed to demonstrate that any provision required the presence of an exhaust system in the pump house where he was working.

█ Turning to the rules under part 23, plaintiff has only alleged that defendant violated a single provision of this part in support of his claim pursuant to § 241(6). Specifically, plaintiff argues that defendant violated rule 23–1.8(b) which is encaptioned "Personal protective equipment . . . Respirators." The first subsection of this provision provides that *"[w]here this Part (rule) requires a respirator be provided,* the employ-

er shall furnish and the employee shall use an approved respirator." 12 NYCRR 23.1–8(b)(1) (emphasis added). However, as properly noted by defendant, plaintiff has failed to identify any provision of part 23 which required that he be provided with a respirator in connection with OBW's repair project. While the Purchase Order contemplated the use of such equipment, the failure to make a prima facia showing with respect to the precondition that part 23 required that a respirator be provided is fatal to plaintiff's claim pursuant to rule 23–1.8(b).

In sum, this Court finds that no triable issue of fact exists to preclude the entry of summary judgment in favor of defendant with respect to plaintiff's claims premised on Labor Law § 241(6).

### E. Plaintiff's Negligence Claim Premised on Alleged OSHA violations by Bethlehem

In its original memorandum of law, plaintiff asserted a negligence claim based on defendant's alleged violation of federal regulations promulgated pursuant to OSHA. (P.Memo at p. 12.) Plaintiff clarified this argument in his supplemental submission by again asserting a separate cause of action premised on alleged OSHA violations and this time citing the specific regulations which he believes defendant violated. (Henry Supp. ¶¶ 15–28.) While plaintiff asserts a direct cause of action against defendant for its alleged violations of OSHA it is unclear whether he intends this claim to be premised on a theory of common law negligence or a violation of Labor Law § 241(6).

Plaintiff has no cause of action pursuant to § 241(6) based on defendant's alleged violations of OSHA regulations. Violette v. Armonk Associates, L.P., 849 F.Supp. at 927–29; Pellescki v. City of Rochester, 605 N.Y.S.2d at 694. Therefore, plaintiff's claims pursuant to § 241(6) premised on the alleged violation of OSHA regulations must be rejected.

On the other hand, "there is no reason that a violation of OSHA regulations, like other Federal or State Regulations, should not be considered as some evidence of negligence under Labor Law § 200 and the common law if the violation was a substantial factor in bringing about the occurrence." Landry v. General Motors Corp., 621 N.Y.S.2d at 256. This does not mean, however, that plaintiff has a "separate" negligence claim based on OSHA. Instead, as recognized by the Second Circuit, the violation of OSHA regulations may merely constitute some evidence in support of a general negligence claim in an appropriate case. Cappellini v. McCabe Powers Body Co., 713 F.2d 1, 4–5 (2d Cir.1983). Unfortunately for plaintiff, this is not such a case. Even if it is assumed that the OSHA regulations cited by plaintiff apply to defendant Bethlehem despite its status as a landowner rather than an employer [7] and that the regulations were violated, OSHA cannot "be used to expand or in any other manner affect Bethlehem's common law or statutory liability for an employee's injuries arising out of, or in the course of, his employment." Merritt v. Bethlehem Steel Corp., 875 F.2d at 608; Mason v. Ashland Exploration, Inc., 965 F.2d 1421, 1425 (7th Cir.1992). Taking into account the alleged violations of OSHA as well as the evidence in the record supporting such claims, this Court is compelled to reaffirm its previous conclusion that plaintiff has failed to raise a triable issue of fact as to whether defendant is liable under either a unsafe work place theory or a claim that defendant exercised the requisite degree of supervision and control over the repair project that it may be held liable for plaintiff's injuries.

Therefore, plaintiff's claims under common law negligence and Labor Law §§ 200 and 241(6) premised on defendant's alleged violations of OSHA regulations must all be dismissed.

---

7. In Pellescki, the Fourth Department stated that "OSHA regulates only the relationship between employers and employees; it imposes no duty on an owner or general contractor." Id., 605 N.Y.S.2d at 694. Such a rule would appear to bar plaintiff from recovering against defendant in this case on a theory that OSHA regulations were violated. However, there does appear to be some dispute on this issue. See Merritt v. Bethlehem Steel Corp., 875 F.2d 603, 608 & n. 4 (7th Cir.1989).

### *CONCLUSION*

Having considered the parties' arguments and viewing the facts documented in the record in a light most favorable to plaintiff, this Court finds that defendant Bethlehem is entitled to summary judgment with respect to all of plaintiff's claims.

### *ORDER*

IT HEREBY IS ORDERED, that defendant Bethlehem's motion for summary judgment is Granted and all of plaintiff's causes of action shall be Dismissed.

FURTHER, that the Clerk of the Court is directed to enter final judgment in favor of defendant Bethlehem and take the necessary steps to close the file relating to this action.