**Kim PALMER, individually and as Administrator of the estate of Frank Palmer, Plaintiff,**

v.

**THE CITY OF YONKERS, City of Yonkers Fire Department, Empress Ambulance Service, Inc., John Doe, Numbers 1,2,3 & 4, and Jane Doe, Defendants.**

#### No. 97 CIV. 7410(BDP).

United States District Court, S.D. New York.

Oct. 15, 1998.

Donna L. Dambrot, Westchester Putnam Legal Services, Shelby Green, Pace University School of Law, White Plains, NY, for Plaintiff.

Ching Wah Chin, Corporation Counsel, City of Yonkers, Yonkers, Jane E. Motyka, Alan I. Lamer, Elmsford, NY, for Defendant Empress.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Plaintiff Kim Palmer brought this suit, individually and as the administrator of the estate of Frank Palmer, her husband, against the City of Yonkers ("Yonkers" or the "City"), the City of Yonkers Fire Department ("Fire Department"), Empress Ambulance Service, Inc. ("Empress"), John Doe 1,2,3,4 and Jane Doe (collectively the "defendants")[1] for violations of rights under the Fourteenth Amendment of the United States Constitution, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"), the Federal Rehabilitation Act, 29 U.S.C. § 794, *et. seq.* ("FRA"), the Civil Rights Act of 1871, 42 U.S.C. § 1983 and various state laws.[2] Defendants have moved pursuant to Fed.R.Civ.P. Rule 56 for summary judgment.[3] For the reasons stated below, the motion is granted.

**1.** The suit against Empress Ambulance, John Doe 4 and Jane Doe was dismissed by the Court because of Empress' bankruptcy stay. *See* 11 U.S.C. § 362(a)(1).

**2.** The plaintiff alleges violations of rights under the New York Human Rights Law, Executive

## BACKGROUND

Pursuant to an agreement ("Agreement") with Yonkers dated September 1, 1993, Empress provides ambulance services to Yonkers residents. At approximately 5:00 a.m. on July 9, 1996, Kim Palmer found her husband, Frank Palmer, who had Acquired Immune Deficiency Syndrome ("AIDS"), laying nude on the kitchen floor in his diarrhea feces conscious but with a fever. Palmer called her husband's Hospice and was told they would arrange transportation to a hospital. When the transportation did not arrive after an half-hour, Palmer again called the Hospice, and when the transportation still did not arrive, she called 911. Palmer told the 911 operator that had husband had AIDS, had fallen, and that she needed help.

Approximately fifteen minutes after the call, three men (John Does, Numbers 1,2 & 3) from the Yonkers Fire Department arrived. The Fire Department participates in the First Responder Program which provides on the scene basic first aid care. The Fire Department does not operate ambulances, and state and federal law do not permit the use of fire trucks as ambulances. Palmer asked the firemen to take her husband to the hospital and the firemen responded that the paramedics and an ambulance would be there shortly. In the interim, they administered oxygen to Mr. Palmer and soon departed. A couple of minutes later paramedics from Empress (Jane Doe and John Doe, Number 4) arrived.

Palmer explained to Empress what was wrong with her husband and requested transportation to the hospital. John Doe Number 4 responded that her husband's condition reflected the usual course with AIDS and the hospital would only rehydrate him, keep him for a couple of hours and she would then have to bring him back home. The Empress paramedics moved Mr. Palmer to the couch, but refused to take him to the hospital. Thereafter, Palmer called a taxicab

Law § 292(2)(a), and claims of negligence and intentional infliction of emotional distress.

**3.** We do not address defendants' request in its brief for dismissal due to the lack of a necessary party (i.e.Empress).

that transported her husband to the Westchester County Medical Center arriving about 11:30 a.m. Palmer's husband stayed at the hospital for approximately three weeks. He was then transferred to a nursing facility where he remained until his death on May 29, 1997.

Palmer brings this suit for declaratory and injunctive relief and monetary damages for alleged violations of the Fourteenth Amendment of the Constitution, the ADA, the FRA and 42 U.S.C. § 1983. She also asserts various state law claims. Specifically, Palmer claims the defendants discriminated against her husband by refusing to provide ambulance services because of his AIDS condition. On August 28, 1997 Empress filed for protection pursuant to Chapter 11 of the Bankruptcy Code and was dismissed from this action. See 11 U.S.C. § 362(a)(1). This motion considers whether the Fire Department violated a duty to Palmer and whether the City is vicariously liable for Empress' conduct.

## DISCUSSION

### 1. Summary Judgment Standard

A motion for summary judgment should only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Hayes v. New York City Dep't. of Corrections, 84 F.3d 614, 619 (2d Cir.1996); Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.1991). The court is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." McNeil v. Aguilos, 831 F.Supp. 1079, 1082 (S.D.N.Y.1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); Hayes, 84 F.3d 614 at 619.

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities in the light most favorable to, and draw all reasonable inferences in favor of, the party opposing the motion. Wernick v. Federal Reserve Bank of New York, 91 F.3d 379, 382 (2d Cir.1996); In re State Police Litigation, 88 F.3d 111, 123 (2d Cir. 1996). The Court must not weigh evidence or assess the credibility of potential witnesses, for such evaluations are to be conducted solely by the jury. Hayes, 84 F.3d at 619; United States v. Rem, 38 F.3d 634, 644 (2d Cir.1994); Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir.1994). A finding of disputed material facts that could reasonably be resolved in favor of either party precludes summary judgment. Wernick, 91 F.3d at 382 (quoting Anderson v. Liberty Lobby, 477 U.S. at 250, 106 S.Ct. 2505).

Generally, the burden is on the moving party to demonstrate that there is no genuine dispute respecting any material fact and that he is entitled to judgment as a matter of law. In re State Police Litigation, 88 F.3d at 123; Gallo v. Prudential Residential Services, Limited Partnership, 22 F.3d 1219, 1223 (2d Cir.1994). To successfully oppose a motion for summary judgment, the responding party "must set forth facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). A summary judgment motion cannot be defeated through mere speculation or conjecture. Pollis v. New School for Social Research, 829 F.Supp. 584, 586 (S.D.N.Y. 1993) (citing Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir.1990) (other citations omitted)).

### 2. The City of Yonkers

Palmer contends the City, through its servants and agents (i.e. Empress and the Fire Department), improperly refused to provide emergency medical care or ambulance services to her husband, and consequently is vicariously liable under the ADA,[4] FRA,[5] and the common law.

---

**4.** The Americans with Disabilities Act provides:
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of accommodation.

## A. *Empress Ambulance, Inc.*

■ The general rule is that a party who retains an independent contractor, as distinguished from an employee, is not liable for the independent contractor's negligence. *Kleeman v. Rheingold,* 81 N.Y.2d 270, 273, 598 N.Y.S.2d 149, 614 N.E.2d 712 (1993). Consequently, the City's liability hinges, in large part, on whether Empress is an employee or an independent contractor. Under New York law, the distinction is based on the fact that the former undertakes to achieve an agreed result and to accept the directions of the employer, and the latter agrees to achieve a certain result but is not subject to the employer's control over the means used. Thus, the crucial determinant is the right of control in respect of the manner in which his work is to be done. *Chaiken v. VV Publishing Corp.,* 119 F.3d 1018, 1033 (2d Cir.1997) (internal quotation marks omitted)(quoting *In re Morton,* 284 N.Y. 167, 172, 30 N.E.2d 369 (1940)).

■ In determining whether such control exists, our Circuit considers such factors as: (1) whether the purported employee is engaged in a distinct occupation, (2) whether the work is usually done under direction or by an unsupervised specialist, (3) the skill involved, (4) who provides the instrumentalities and place of performance, (5) the length of employment, (6) whether payment is by time or by the job, (7) whether the work is part of the employer's regular business and/or necessary to it, and (8) the intent of the parties creating the relationship. *Chaiken,* 119 F.3d at 1034 (citing *Hilton Int'l Co. v. NLRB,* 690 F.2d 318, 320 (2d Cir.1982)).

■ On consideration of these factors, we find that Empress was an independent contractor. While the City set basic standards under the Agreement, it was not in the business of providing ambulance services, and Empress provided all personnel, vehicles and equipment. Palmer concedes that Yonkers did not actually hire, supervise, train or manage any personnel of Empress Ambulance. *See* Defendants City of Yonkers and City of Yonkers Fire Department's Statement of Undisputed Facts, ¶ 2. This assertion must be accepted because Palmer's opposition contains no affidavits or otherwise admissible contradictory facts. *See* Fed.R.Civ.P. Rule 56(e); Local Civil Rule 56.1. Further, Empress received no payments from the City and the Agreement expressly provides that Empress is an independent contractor.

Both parties concede general vicarious liability principles apply under the ADA. *Neff v. American Dairy Queen Corp.,* 58 F.3d 1063, 1068–69 (5th Cir.1995), *cert. denied,* 516 U.S. 1045, 116 S.Ct. 704, 133 L.Ed.2d 660 (1996). While it is clear that ordinarily a principal is not liable for the acts of an independent contractor, there are, of course, numerous exceptions to this general rule. *Chainani v. Board of Education of the City of New York,* 87 N.Y.2d 370, 380–381, 639 N.Y.S.2d 971, 663 N.E.2d 283 (1995). Palmer contends that the City is vicariously liable for the acts of Empress because, (1) it retained significant control over Empress, and (2) the provision of ambulance services was a nondelegable duty. We address each of these allegations in turn.

■ An employer can be held vicariously liable for the tort of an independent contractor if the employer directed or took some affirmative part in the act from which injury resulted. *Cubby, Inc. v. CompuServe, Inc.,* 776 F.Supp. 135, 143 (S.D.N.Y.1991) (citation omitted). Thus the level of control is a threshold inquiry. *See also Kaczmarek v. Bethlehem Steel Corp.,* 884 F.Supp. 768, 776–777 (W.D.N.Y.1995).

■ Palmer, relying expressly on the text of the Agreement, contends the City retained an extensive level of control over the mode and manner of the performance of the ambulance services by Empress. In support, Palmer points to several sections in the Agreement articulating the standards and

---

42 U.S.C. § 12182(a).

**5.** The Federal Rehabilitation Act provides, in part:

No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...

29 U.S.C. § 794(a).

protocols relating to the provision of the services and concludes that the Agreement: (1) requires Empress to establish a medical reporting system, (2) prohibits Empress from making changes in services to be provided without written approval of the City, (3) requires standard emergency medical technician training, (4) reserves to the City the right to require additional training, (5) sets out required equipment, (6) requires certain staffing requirements, and (7) provides for a $200,000 payment by the City to Empress.

A more nuanced reading of the Agreement, however, illustrates that these provisions are not "control" mechanisms since they are not directed to the actual manner in which Empress is to perform ambulance services, but are intended to insure compliance with applicable governmental regulations. For example, while Palmer points to the City's reservation of the right to require additional training of Empress' employees, the Agreement explains that this additional training "shall be any that is necessary to maintain certification due to applicable regulatory guidelines, and all costs are to be borne by Empress." The Agreement also requires Empress to establish a medical reporting system, but our reading of Agreement teaches that this provision does not evidence control but is designed to insure that Empress' services can be monitored for compliance with applicable federal and state regulations as well as with the Westchester County Medical Advisory Committee's protocols. The Agreement states that:

> services shall be provided in accordance with all laws, ordinances, rules and regulations applicable thereto, including the NYS Emergency Medical Coverage Code, the protocols established by the Westchester Regional Emergency Medical Service Council or the EMS Medical Director, or such other protocols as may be developed by the Medical Director of [Empress] and approved by the Physicians Advisory Group of the Council.

Further, the Agreement provides for the City to pay $200,000 to Empress, but this payment is explicitly in consideration of Empress providing services directly to the City (i.e. provide decontamination services for the police and fire department vehicles, provide land based transportation and treatment for City employees and prisoners, replenish all disposable supplies used by the First Responder Program, and emergency standby service in the case of a mass casualty).

*Chainani v. Board of Education,* 87 N.Y.2d 370, 639 N.Y.S.2d 971, 663 N.E.2d 283 (1995), illustrates the differences between cases where the degree of control necessary to impute vicarious liability was established and the facts established by Palmer. There the New York Court of Appeals in two separate cases found no vicarious liability for schools which contracted with independent bus companies for transportation services. In determining whether the schools were exposed to direct liability, the court found that although there may be statutory duties imposed in the provision of transportation services, the schools had contracted-out responsibility for transportation and were therefore not vicariously liable. The court noted that although the school conducted safety training sessions for bus drivers, it did not retain control over the manner in which the bus company picked up and discharged students (i.e. how it actually performed its work). *Chainani,* 87 N.Y.2d at 378–381, 639 N.Y.S.2d 971, 663 N.E.2d 283. *Neff v. American Dairy Queen Corp.,* 58 F.3d at 1068–69 (summary judgment affirmed and court held defendant franchisor with supervisory authority to set construction standards and equipment maintenance was insufficient to support a holding that the defendant was liable for alleged ADA public accommodation discrimination in franchisee's building); *Cubby, Inc. v. CompuServe, Inc.,* 776 F.Supp. 135, 142–143 (S.D.N.Y.1991) (defendant company not vicariously liable and entitled to summary judgment for independent contractor's alleged defamation even though company retained right to require compliance with the company's standards of bulletin posting and the contract allowed company to provide training and indemnification); *Kaczmarek v. Bethlehem Steel Corp.,* 884 F.Supp. 768, 777 (W.D.N.Y.1995) (defendant general contractor not vicariously liable and entitled to summary judgment for injuries of an employee of a subcontractor when defendant general contractor retained right

to oversee work and to demand compliance with contract and safety rules). Thus, although the plaintiff is correct that the Agreement imposes on Empress certain general reporting and review obligations, the cases make clear that this abstract authority is not determinative, particularly where, as here, it is conceded that Yonkers did not actually hire, supervise, train or manage any Empress personnel.

■ Palmer also contends that the City is vicariously liable because the City was not free to delegate the responsibility of providing ambulance services. *See Chainani v. Board of Education,* 87 N.Y.2d at 381, 639 N.Y.S.2d 971, 663 N.E.2d 283; *Kleeman v. Rheingold,* 81 N.Y.2d at 274–275, 598 N.Y.S.2d 149, 614 N.E.2d 712.

■ Whether a duty is nondelegable hinges on whether the responsibility is so important to the community that the city should not be permitted to transfer it to another. *Kleeman,* 81 N.Y.2d at 275, 598 N.Y.S.2d 149, 614 N.E.2d 712 (citation omitted). The plaintiff asserts that given the extensive and comprehensive body of prescribed standards and regulations concerning ambulance services, permitting the City to shift ambulance service to the private sector would frustrate legislative and public policies.

Specifically, the plaintiff cites N.Y. Gen. Mun. L. § 122–b(1)(a),(b) which authorizes the City to provide emergency medical service and general ambulance, either directly or by contracting with a private entity. This legislation, however, specifically provides that a municipality *may* provide emergency medical services and it *may* contract with another entity. N.Y. Gen. Mun. L. § 122–b(1)(b). Thus, the statute on which Palmer relies proves the opposite of the proposition for which it is offered.

Palmer also looks to *Kleeman v. Rheingold,* 81 N.Y.2d 270, 598 N.Y.S.2d 149, 614 N.E.2d 712 (1993), to support her contention that the City had a nondelegable duty. There the court held that an attorney could be vicariously liable for a process server's failure to serve legal papers within the requisite time period. We are not persuaded. In imposing liability in *Kleeman* the court relied heavily on its conclusion that the timely and accurate service of process is a critical and integral component of the professional obligations an attorney is hired to perform and for which the attorney remains personally responsible. *Id.* at 275, 598 N.Y.S.2d 149, 614 N.E.2d 712. We find that the City did not have a nondelegable duty and consequently is not vicariously liable for Empress' alleged omission.

*B. Fire Department*

■ Next, Palmer claims that Yonkers is liable because the Fire Department did not transport her husband. Initially, we note the Fire Department is not properly named as a defendant because it is simply a department of the City, which is a named defendant. *Capozzi v. City of Olean,* 910 F.Supp. 900, 906–907 (W.D.N.Y.1995) (citing *Manning v. County of Westchester,* No. 93 Civ. 3366, 1995 WL 12579 at *2 (S.D.N.Y. Jan. 5, 1995) (Westchester County Police Department removed as named defendant where the County of Westchester, as the real party in interest, was already a named defendant)). Yonkers claims the allegations against the Fire Department fail because Empress was on the scene and the Fire Department's vehicles are prohibited from being used as ambulances under both federal and state law.

Under CFR 410.40(a), an ambulance is a vehicle that (1) is specially designed for transporting the sick or injured, (2) contains a stretcher, linens, first aid supplies, oxygen equipment, and other lifesaving equipment required by state or local laws, and (3) is staffed with personnel trained to provide first aid treatment. New York law provides, in part, for minimum headroom in the patient compartment, a clear interior to accommodate two recumbent patients with room for an attendant, and specifies the numerous equipment and supplies that are to be keep in the vehicle from patient transfer equipment to childbirth supplies. N.Y. Comp. Codes R. & Regs. §§ 800.22–800.25.

The Deputy Mayor of the City has demonstrated that none of the City's Fire Department vehicles meet New York's definition of an ambulance. As stated in the Agreement, the Fire Department responds to 911 emer-

gency calls as a First Responder with basic first aid care. Participants in the First Responder Program include Fire and Police Department personnel who have completed a New York State Department of Health training program that encompasses initial emergency care, CPR, bleeding control, and basic airway management, and respond to City dispatch emergencies. Since the Fire Department's vehicles do not meet the definition of an ambulance, the City cannot be faulted for failing to use fire trucks as ambulances.

Further, it is clear that the Fire Department responded to Ms. Palmer's 911 call knowing her husband had AIDS because: (1) she told the dispatcher her husband's condition, and (2) as the firemen came into her home they were putting on gloves. Upon their arrival, they put an oxygen mask on her husband. Plaintiff states that the Empress paramedics arrived only a minute after the firemen. Since trained medical professionals were at Palmer's home at virtually the same time as the firemen, they cannot be faulted for acting as firemen instead of ambulance drivers.

### 3. 42 U.S.C. § 1983

The plaintiff alleges a violation of 42 U.S.C. § 1983 but fails to establish any element of the claim. To the extent the § 1983 claim is based on disability discrimination, it falls along with her disability claim.[6] *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (42 U.S.C. § 1983 is not its own source of rights); *See also Deepwells Estates, Inc. v. Incorporated Village of Head Harbor,* 973 F.Supp. 338, 348 (E.D.N.Y.1997).

 Further, the City of Yonkers is not liable under § 1983 because municipal liability under this statute must be predicated on the existence of a government policy or custom and not on the theory of *respondeat superior. Monell v. Department of Social Services,* 436 U.S. 658, 691, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Sarus v. Rotundo,* 831 F.2d 397, 400 (2d Cir.1987); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) (there must be a causal link between an official policy or custom and the plaintiff's injury). The plaintiff has made no allegation that the City or Fire Department had a rule, regulation, procedure or practice that caused her alleged deprivation of rights. And the court will not infer the existence of a municipal policy from a single incident. *Oklahoma City v. Tuttle,* 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (proof of a single incident is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing unconstitutional municipal policy which can be attributed to a municipal policy-maker). In sum, the plaintiff's § 1983 claim is dismissed.

### 4. State Law Claims

In view of the dismissal of plaintiff's federal claims, this Court declines to entertain her state claims. *See, e.g., Salim v. Proulx,* 93 F.3d 86, 92 (2d Cir.1996); *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir.1995).

### CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment pursuant to Fed.R.Civ.P. Rule 56 is granted. The Clerk of the Clerk is directed to enter final judgment dismissing this case.

### SO ORDERED.

---

**6.** In defendants' brief for summary judgment they request that plaintiff's remaining claims based on 42 U.S.C. § 1983 be dismissed and then proceed to discuss municipal liability under § 1983 but do not explicitly discuss the Fourteenth Amendment violation claim plaintiff alleg-

es in her amended complaint. The plaintiff neither addresses the § 1983 nor the Fourteenth Amendment claims in her brief opposing summary judgment. For the purposes of this motion we assume the defendants' motion reaches plaintiff's Fourteenth Amendment claim.