PAUL BROWN et al., Respondents, v TWO EXCHANGE PLAZA PARTNERS, Defendant, and GEORGE A. FULLER COMPANY, Defendant and Third-Party Plaintiff-Appellant. HEYDT CONTRACTING CORP. et al., Third-Party Defendants-Respondents; HEYDT CONTRACTING CORPORATION, Fourth-Party Plaintiff-Respondent; WALTER F. UMLA, INC., et al., Fourth-Party Defendants-Respondents.

First Department, April 6, 1989

APPEARANCES OF COUNSEL

*Ignatius John Melito* of counsel *(S. Dwight Stephens* with him on the brief; *Siff, Rosen & Parker, P. C.,* and *Morris & Duffy,* attorneys), for George A. Fuller Company, defendant and third-party plaintiff-appellant.

*Theodore H. Rosenblatt* of counsel *(Rhonda S. DeMeo* with him on the brief; *Bivona & Cohen,* attorneys), for Heydt Contracting Corp., third-party defendant-respondent.

*Joseph W. Conklin (Daniel M. Goldfarb* with him on the brief), for Central Furring and Dry Wall Company, third-party defendant-respondent.

*Mark S. Moroknek* of counsel *(Ayers & Thompson,* attorneys), for A & M Wallboard, third-party defendant-respondent.

## OPINION OF THE COURT

WALLACH, J.

In the construction industry, agreements purporting to indemnify a party against liability for damage caused by his own negligence are void as against public policy (General Obligations Law § 5-322.1). Aside from this statutory prohibition, such agreements—"which are usually 'negotiated at arm's length between * * * sophisticated business entities' and which can be viewed as merely 'allocating the risk of liability to third parties between themselves, essentially through the employment of insurance' " *(Gross v Sweet,* 49 NY2d 102, 108, quoting *Hogeland v Sibley, Lindsay & Curr*

*Co.,* 42 NY2d 153, 158, 161)—are not subject to any special level of scrutiny. It is no more suspect for such an agreement to require indemnification in circumstances not involving negligence by the indemnitor than it is for it not to require indemnification except in circumstances that do involve negligence by the indemnitor. Whether negligence by the indemnitor is required or not is a question without policy significance to be resolved by the parties themselves as a bargaining issue at the time of contract formation *(cf., Levine v Shell Oil Co.,* 28 NY2d 205, 213).

Plaintiff, a lather, was working on the lobby/atrium of an office building under construction when the scaffold on which he was standing collapsed. The scaffold was erected by Heydt Contracting Corp. pursuant to a subcontract with the general contractor, George A. Fuller Company, and was designed to be used in common by all of the many trades needed in the lobby/atrium, including subcontractor A & M Wallboard Company, hired by Fuller to erect the walls and ceilings. A & M in turn hired Central Furring and Dry Wall Company, plaintiff's employer, to install the suspension system for the ceiling, work which plaintiff was doing when he fell. At trial, none of the parties were able to show why the scaffold collapsed, and all of the witnesses were agreed that it appeared completely safe and without defects just before the accident.

Plaintiff sued Fuller, who impleaded Heydt, A & M and Central Furring, who cross-claimed against each other and counterclaimed against Fuller and plaintiff. At the close of evidence, plaintiff moved for a directed verdict against Fuller, arguing that the mere collapse of the scaffold was enough to make the general contractor liable to him under Labor Law § 240 (1). The trial court granted this motion, a ruling not challenged on appeal. Fuller then moved for a directed verdict against Heydt, A & M and Central Furring, arguing that each was negligent and thus liable over to it for contribution, and that each was also its statutory agent under Labor Law § 240 (1) and liable over to it for this reason as well; in addition, as against Heydt and A & M, Fuller argued that each was liable over to it by virtue of an indemnification clause in both of their subcontracts. That clause requires the subcontractor to indemnify Fuller against, among other things, personal injury to any person "arising out of, in connection with or as a consequence of the performance of the [subcontractor's] Work and/or any act or omission of the Subcontractor or any of its

subcontractors * * * as it relates to the scope of this Contract."

The trial court ruled that none of the third-party defendants were Fuller's statutory agents and dismissed those claims. In addition, it held that not only was a directed verdict against A & M and Central Furring based on negligence not warranted, but that there was insufficient evidence of negligence against those two defendants even to submit to the jury, and it accordingly dismissed all claims against them for contribution; the question of Heydt's negligence, however, was left for the jury. No decision was made as to whether Heydt and A & M were contractually liable to Fuller for indemnification, the court apparently reserving decision on that question. A & M and Central Furring did not participate further in the trial.

The trial court instructed the jury that, aside from plaintiff's damages, the only issue before it was whether "Fuller has established that Heydt was solely responsible for the accident and is therefore liable to Fuller." Heydt's attorney objected on the ground that the jury should be permitted to apportion damages as between Fuller and Heydt, but the court, despite no comment from Fuller's attorney on this aspect of the charge, adhered to its view that Fuller was entirely responsible for plaintiff's damages under Labor Law § 240 (1) unless the jury found Heydt's negligence to be the sole cause of the accident. When the jury itself asked whether it could apportion damages as between Fuller and Heydt, the trial court reiterated this all-or-nothing instruction. The jury came back with a verdict of $2,350,000 for plaintiff and of $500,000 for his wife on her derivative loss of services cause of action, and found that Heydt was not negligent and therefore not liable over to Fuller.

Immediately after the verdict, Fuller moved to set it aside as excessive, and renewed its motion for judgment over against Heydt and A & M based on contractual indemnification. Insofar as the motion sought to set aside the verdict, it was denied; insofar as it sought judgment over, Fuller was directed to make it on papers. A request by Fuller for directions as to when to submit such a motion went unheeded by the court. Fuller made the motion almost two months later, characterizing it as one "for a judgment pursuant to Rule 4404 CPLR". Heydt and A & M opposed on the ground that the motion was untimely under CPLR 4405; A & M, in addition, argued that in the event it was held liable to Fuller,

it should be granted judgment over against Central Furring based on the indemnification clause in their own subcontract. That clause requires the subcontractor to indemnify A & M against injuries "arising out of or resulting from the performance of the Subcontractor's Work * * * to the extent caused in whole or in part by any negligent act or omission of the Subcontractor * * * regardless of whether it is caused in part by [A & M]."

The trial court deemed Fuller's motion to be one pursuant to CPLR 4404 that had to be made within 15 days of the verdict under CPLR 4405, and accordingly denied it as untimely. The court also stated that if the merits were reached, it would deny the motion on the grounds that the indemnification clause contained in Fuller's subcontracts was by its terms inapplicable unless the subcontractor was "in some way negligent", and, in any event, unenforceable under General Obligations Law § 5-322.1 since Fuller was found liable under Labor Law § 240 and the subcontractors were not negligent.

Only Fuller appealed from the judgment and subsequent order, assigning as error the trial court's rulings that Heydt and A & M are not liable over to it for contractual indemnification, that Heydt is not liable over to it as a statutory agent under Labor Law § 240 (1), that its posttrial motion was untimely, and that the damages awarded plaintiff and his wife are not excessive. Although it did not file a notice of appeal, A & M argues that its alternative claim against Central Furring for contractual indemnification is reviewable under CPLR 5501. After Fuller filed its brief, it settled its excessive verdict claim with plaintiffs by paying them $1,243,855.66 in full satisfaction of the judgment, a settlement in which Heydt, A & M and Central Furring did not take part.

We first hold that plaintiff's accident did not arise out of, in connection with or as a consequence of the performance of Heydt's work, and that Heydt, therefore, is not liable to Fuller in contract for indemnification. The performance required of Heydt under its contract with Fuller was to erect a scaffold and then dismantle it as needed and directed by Fuller. Once the scaffold was completed, inspected and accepted by Fuller, Fuller was to have control over its use and maintain it, with Heydt's further performance limited to instances where Fuller, by written notice, called it back to the site. The scaffold was completed and accepted by Fuller at least one week before the accident, although Heydt was at the site as late as four days before, presumably at Fuller's request,

moving or "straightening" the scaffold so that trucks could enter the lobby and back in under it to unload materials. But to say, as Fuller does, that plaintiff's accident arose out of, in connection with or as a consequence of Heydt's erection or straightening of the scaffold, without any showing of a particular act or omission in the performance of such work causally related to the accident, would be to make Heydt a virtual insurer of the scaffold. Heydt would be responsible for an unexplained collapse of the scaffold at a time when it had no control over its use or responsibility for its maintenance, and, as contemplated by its contract with Fuller, was not even present at the site. Clearly, it was not the intent of the indemnification clause to broaden Heydt's responsibility to such an extent, but rather to spread the risk of injury among Fuller's subcontractors as they respectively performed their various jobs and were present at the site. As the accident occurred when Heydt's performance was, as it were, on hold, we hold that the indemnification clause in its contract with Fuller does not apply.

It follows that Fuller's third-party claim against Heydt should be dismissed unless, as Fuller argues, Heydt was its agent under Labor Law § 240 (1), that statute, by its terms, being applicable to "contractors and owners and their agents". We hold not. A subcontractor becomes responsible to the general contractor as the latter's Labor Law § 240 (1) agent only if the subcontractor has authority to supervise and control the work *(Russin v Picciano & Son,* 54 NY2d 311, 318). Here, at the time of the accident, control over the scaffold was with Fuller, not Heydt, as per their contract, and indeed Heydt was not even present at the site and had not been for four days *(compare, Drzewinski v Atlantic Scaffold & Ladder Co.,* 70 NY2d 774 [scaffolding contractor held liable as a Labor Law § 240 (1) agent where its contract required it not only to erect but to maintain the scaffold]).

If the question of Heydt's liability under the indemnification clause contained in Fuller's subcontracts is not without difficulty, requiring as it does a close reading of Heydt's performance obligations under the substantive provisions of its particular subcontract and a construction of the phrase "performance of the Work" as used in the indemnification clause, A & M's liability thereunder is open-and-shut. The intent of the clause was to make A & M responsible for just such an accident as this—an injury to a worker (plaintiff) employed by a sub-subcontractor (Central Furring) sustained

while doing work called for in the subcontractor's (A & M's) contract with the general contractor (Fuller). And, contrary to the reading given the clause by A & M and the trial court, we do not construe it as conditioning the right to indemnification upon a showing that A & M was in some way negligent. Clearly, the "and/or" syntax of the clause indicates a purpose to broaden the basis of liability beyond negligence. Indeed, the major function of an indemnification clause such as this would seem to be elimination of negligence as a prerequisite to indemnification, indemnification based on negligence being a remedy already available, at common law without any indemnification clause at all, to a general contractor not actively negligent but nonetheless liable vicariously *(see, Guzman v Haven Plaza Hous. Dev. Fund,* 69 NY2d 559, 567-568; *Margolin v New York Life Ins. Co.,* 32 NY2d 149, 152-153). By such a clause, the general contractor, anticipating an accident in which no negligence by any party can be established, seeks to spread his broad, absolute, frequently vicarious liability under the Labor Law to his subcontractors regardless of fault, as each undertakes to perform. It follows that A & M is liable to indemnify Fuller, not because it was negligent but because a worker was injured while doing its work, unless the indemnification clause is void under General Obligations Law § 5-322.1, as A & M argues and the trial court held.

General Obligations Law § 5-322.1, as amended in 1981 and applicable to these 1982 contracts, declares void agreements purporting to indemnify contractors against liability for injuries "contributed to, caused by or resulting from" their own negligence, "whether such negligence be in whole or in part". We think it quite plain that the question for purposes of this statute is whether the indemnitee-general contractor Fuller was negligent, not as the trial court perceived, whether the indemnitor-subcontractors were not negligent, and that the bar of the statute applies only if the indemnitee was in some degree negligent irrespective of negligence, or the lack of it, by the indemnitor. Thus, a general contractor who is 1% responsible for an accident is, by reason of the statute, barred from enforcing an indemnification agreement and is limited instead to 99% contribution from his co-tort-feasors; a general contractor free of negligence, on the other hand, may enforce his subcontractor's agreement to indemnify, the latter's freedom from negligence notwithstanding.

A & M argues that for purposes of General Obligations Law § 5-322.1, Fuller's liability under Labor Law § 240 (1) is

the legal equivalent of a finding of negligence. We disagree. Liability under Labor Law § 240 (1) is absolute, meaning that it is imposed without regard to whether due care was exercised or not *(Zimmer v Chemung County Performing Arts,* 65 NY2d 513, 521; *Crawford v Leimzider,* 100 AD2d 568), and, thus, should not give rise to an inference of negligence. To be sure, a Labor Law § 240 (1) violation does imply fault, predicated as it is on a failure to provide safety devices necessary to give proper protection to a worker who sustains injuries proximately caused by that failure *(Bland v Manocherian,* 66 NY2d 452, 459), and perhaps such fault can be apportioned with another contractor's actual negligence (a possibility not briefed on this appeal), but even if this be so, the record here simply does not show what Fuller did or did not do to make the workplace unsafe for plaintiff. To have the jury determine the degree to which Fuller was at fault for this accident would be to have it engage in guesswork. The burden is on the subcontractor to come forward with proof that the general contractor was, if not actually negligent, then at least at fault for the Labor Law violation, and, "in the absence of such proof, the limitation on the force of the parties' indemnification agreement which results from application of General Obligations Law 5-322.1 is inapplicable" *(see, Walsh v Morse Diesel,* 143 AD2d 653, 655).

The trial court's all-or-nothing charge, given after a full trial in which both A & M and Central Furring had a full opportunity and every incentive to adduce proof of Fuller's negligence, indicates a finding of insufficient evidence of negligence on Fuller's part (and on A & M's and Central Furring's parts) to submit to the jury, and that negligence on Heydt's part appeared to be the only possible cause of the accident. While our own reading of the record leaves us in doubt as to whether there was sufficient evidence of Heydt's negligence to submit to the jury (if it was error for the trial court to submit the issue of Heydt's negligence to the jury, the error was made harmless by the jury's finding in favor of Heydt on that issue), we are fully in accord with the trial court that there was insufficient evidence of Fuller's negligence to submit to the jury, so that to the extent General Obligations Law § 5-322.1 makes an issue of Fuller's negligence, a new trial is not needed to resolve it.

█ A & M argues that the indemnification clause in its contract with Fuller is void as the last portion thereof (curiously not included in Heydt's contract with Fuller) expressly

purports to require indemnification even if Fuller's negligence contributes to an accident. Overbroad and void as this portion of the clause is, it does not follow that the entire clause is thereby voided (see, Quevedo v City of New York, 56 NY2d 150), particularly where it begins "to the extent permitted by law". The clause is void to the extent it requires indemnification in the presence of negligence on Fuller's part; it is valid to the extent it requires indemnification in the absence of negligence on Fuller's part.

A & M argues that in the event it is held liable to Fuller, then Central Furring should be held liable to it under the indemnification clause in its own subcontract with Central Furring. Assuming that we may review this question under CPLR 5501 in the absence of a notice of appeal, we read this clause, in contrast to that in Fuller's contracts, as requiring indemnification only if the subcontractor is negligent—its evident purpose being not to broaden the basis of an indemnitor's liability under the common law beyond negligence, but to circumvent the common-law rule barring indemnification of a party whose active negligence partially contributes to an accident. Such a purpose was perfectly lawful until 1981, before General Obligations Law § 5-322.1 was amended to declare indemnification of a partially negligent part to be against public policy (Quevedo v City of New York, supra, at 155-156), but, as already noted, A & M's contract with Central Furring was entered into in 1982. Of course, that the major purpose of the clause invoked by A & M has been interdicted by statute is no reason to construe it other than in accordance with its plain meaning. As the record contains no evidence of negligence by Central Furring, the indemnification clause invoked by A & M is without effect.

A & M contends that the verdict is excessive, although what its view is of the reduced damages stipulated to by plaintiffs and Fuller we cannot say, plaintiffs having settled with Fuller after A & M filed its opposition brief concurring with Fuller's main brief insofar as it challenged the verdict as excessive. Nevertheless, on the assumption that A & M would object to the reduced amount, we are not disposed to grant a new trial on damages. Although the question of A & M's negligence had been taken from the jury and decided in its favor by the court, the question of its contractual liability to Fuller remained reserved and undecided. Given this exposure to liability, A & M should have requested that it be permitted to sum up to the jury on the issue of damages, and that the

jury be charged that its liability was strictly a question of law for the court.

◼ Finally, we hold that Fuller's posttrial motion for judgment as a matter of law was not untimely. Fuller argues that because this motion did not challenge the jury's verdict, which was limited to the question of Heydt's common-law negligence, but raised only the legal question of contractual indemnification, it should not have been deemed a motion pursuant to CPLR 4404 (a) governed by the 15-day time limit of CPLR 4405. This is a point we need not decide. It is enough to say that no time limit on the motion was set by the court even when Fuller asked it to do so, and that no party suffered prejudice as a result of the delay in presenting to the court written argument invited by the court (CPLR 2004; *see,* 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 4405.05).

Accordingly, the judgment of the Supreme Court, New York County (Beatrice Shainswit, J., and a jury), entered February 26, 1988, which, *inter alia,* dismissed defendant George A. Fuller Company's third-party complaint against A & M Wallboard Company, should be modified, on the law, to award Fuller judgment over against A & M, and otherwise affirmed, without costs. The appeal from the order of the same court, entered May 18, 1988, should be dismissed, without costs, as academic in view of the modification of the aforementioned judgment.

KUPFERMAN, J. P., CARRO, ASCH and ROSENBERGER, JJ., concur.

Judgment, Supreme Court, New York County, entered on February 26, 1988, unanimously modified, on the law, without costs and without disbursements, to award Fuller judgment over against A & M, and otherwise affirmed, and the appeal from an order of said court entered on May 18, 1988, dismissed as academic in view of the modification of the aforementioned judgment, without costs and without disbursements.