**Clayton Larry BOYETTE and Delores Boyette, Plaintiffs,**

**v.**

**ALGONQUIN GAS TRANSMISSION COMPANY, Defendant.**

**ALGONQUIN GAS TRANSMISSION COMPANY, Third–Party Plaintiff,**

**v.**

**DICK ENTERPRISES, INC., Third–Party Defendant.**

No. 94 Civ. 6652 (WCC).

United States District Court, S.D. New York.

Jan. 24, 1997.

---

Arye, Kors, Lustig & Sassower, P.C., New York City (D. Carl Lustig, III, Robert M. Fiala, of counsel), for Plaintiff.

Keane & Beane, P.C., White Plains, NY (Frederic B. Eisman, Joel H. Sachs, Donna E. Frosco, of counsel), for Defendant and Third–Party Plaintiff.

Ahmuty, Demers & McManus, White Plains, NY (Thomas M. DeSimone, of counsel), for Third–Party Defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Clayton Larry Boyette brings this action against Algonquin Gas Transmission Co. ("Algonquin") seeking damages on claims of negligence and violations of New York Labor Law for injuries Mr. Boyette sustained when he fell on Algonquin's property on August 9, 1990. Plaintiff Delores Boyette, Clayton's wife, has joined a claim for loss of consortium. Algonquin has impleaded Third–Party Defendant Dick Enterprises, Inc., ("Dick"), the contractor performing construction work on the property at the time of the accident. We have diversity jurisdiction over the action pursuant to 28 U.S.C. § 1332. Algonquin brings this motion under Fed. R.Civ.P. 56 seeking summary judgment against Boyette establishing no liability, and against Dick establishing that Dick is contractually liable to defend, indemnify and insure Algonquin.

## BACKGROUND

On or about June 11, 1990, Algonquin and Dick entered into a contract pursuant to which Dick agreed to act as the general contractor on a project to expand Algonquin's existing compressor station in Southeast New York. To insure Dick's conformance with the contract, Algonquin had on site a chief inspector, Pat Convery, and a welding inspector, Lee Wright. The contract provided that Dick would indemnify Algonquin (Article IX) and that Dick would obtain specified amounts of insurance (Article X).

Boyette was injured when he fell over a two-by-four lying on the ground on Algon-

quin's premises. Boyette had arrived at the construction site for the first time that morning, had spoken to the union job steward about performing welding work for Dick, had filled out a W–2 form and had taken a drug test. Byt.Depo. pp. 25–29. Before hiring welders, Dick required applicants to pass a welding qualification test. While there is a dispute as to exactly what Boyette was doing when he fell, apparently he was standing in a separate "lay-down" or materials storage area where welding qualifications tests were being given. According to the report of Lee Wright, Algonquin's weld inspector on the site, Boyette tripped over "a two-by-four that some pipe was stacked on." Pl.Exh. E. (Dick asserts in its brief that Wright was conducting the test. Dick Br. P. 4) Boyette then tried to complete the welding test but was unable to do so and "had Dick take him to the doctor." Pl.Exh. E.

As a result of the fall, plaintiff suffered a herniated disc and had to have a lumbar laminectomy and excision of the ruptured disc. In his answers to Dick's interrogatories, he states that he suffers "permanent effects of pain, loss of motion, disability, loss of proper use, atrophy, anxiety and mental anguish," and has been "confined to bed and/or home, except for medical treatment and occasional excursions," and has been out of work from the time of the accident to the present. Pl.Exh. A, ¶¶ 8–11, 14.

Clayton and Delores Boyette brought suit against Algonquin in Supreme Court, New York County in August of 1993 alleging $10 million and $1 million in damages, respectively. Algonquin requested that Dick, Algonquin's general contractor, indemnify and defend Algonquin, but the request was denied.[1] Eisman Dec.Exh. G. In November, Algonquin impleaded Dick, asserting that Dick is obligated by contract to defend, indemnify and procure liability insurance for Algonquin. Dick had the case removed to this court, and in November 1995, Algonquin amended its Third Party complaint to allege that Dick had been negligent and had breached the contract by its manner of conducting activi-

ties at the site. In March of 1996, Algonquin served on Dick a request to admit its obligations to indemnify and insure Algonquin. This request has never been answered. In June of 1996, Algonquin brought this motion for a summary judgment that: 1) Algonquin is not liable to Boyette for negligence or otherwise under the labor laws; and 2) that Dick is contractually obligated to defend, indemnify and procure insurance for Algonquin against such liability. We discuss both contentions below.

## DISCUSSION

### I. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(d). A material fact is genuinely disputed only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences must be drawn in the light most favorable to the nonmoving party. *City of Yonkers v. Otis Elevator Co.*, 844 F.2d 42, 45 (2d Cir.1988).

### II. *LIABILITY*

Boyette has charged Algonquin with common law negligence and violations of New York Labor Law §§ 200(1) and 241(6). The New York Court of Appeals has explained that § 200 is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work. *Comes v. New York State Elec. and Gas*, 82 N.Y.2d 876, 609 N.Y.S.2d 168, 169, 631 N.E.2d 110, 111 (1993). Section 241(6), by contrast, "imposes a nondelegable duty upon

---

1. Algonquin characterizes this denial as "perplexing", in light of the fact that "Dick and its insurer did in fact provide a defense and indemnification to Algonquin in connection with anoth-er personal injury lawsuit commenced by another Dick employee working on the same job site, Robert Podlaski, in 1991." Alg.Br. p. 7, n. 4.

owners and contractors to provide reasonable and adequate protection and safety to construction workers." *Id.* This section imposes liability regardless of the owner's control of the work being done. *Adkins v. Trezins,* 920 F.2d 164, 166 (2d Cir.1990); *Allen v. Cloutier Constr. Corp.,* 44 N.Y.2d 290, 405 N.Y.S.2d 630, 634, 376 N.E.2d 1276, 1279–80 (1978). We discuss each of these sections below.

### A. Section 200

■ Although § 200 codifies the common-law duty upon owners to provide a safe work environment, an implicit precondition to this duty "is that the party charged with that responsibility have the authority to control the activity bringing about the injury." *Comes,* 609 N.Y.S.2d at 169, 631 N.E.2d at 111 (citations omitted). Where an alleged defect or dangerous condition arises from the contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner under the common law or under Labor Law § 200. *Id.* Mere notice of the dangerous condition, standing alone, does not impose liability absent supervisory control. *Id.*

In *Comes,* the New York Court of Appeals upheld the Appellate Division's reversal of a denial of summary judgment to a defendant landowner sued under § 200 by an employee of the landowner's general contractor. Plaintiff Comes had been injured after being directed by the general contractor to carry a 14–foot steel beam unassisted. The Appellate Division noted that "[t]his is not one of those exceptional cases where there is evidence that the owner actually exercised supervisory control over the contractor's work and had actual or constructive notice of the unsafe condition." *Comes v. New York State Electric and Gas Corp.,* 189 A.D.2d 945, 592

N.Y.S.2d 478, 479 (3d Dep't 1993). While defendant had a construction inspector who visited the work site, the Court of Appeals noted his duties were limited to observing the work and reporting to the contractor safety violations by the workers. *Comes,* 609 N.Y.S.2d at 169, 631 N.E.2d at 111. It noted further that the inspector "had no reason to believe that Comes' employer would require him to carry the steel beam unassisted." *Id.* It then stated *"[M]ore to the point, this Court has not adopted the reasoning of Nagel and imposed liability under the statute solely because an owner had notice of the allegedly unsafe manner in which the work was performed."* *Id.* (emphasis added).

■ Plaintiff has established that Algonquin had notice of the allegedly dangerous condition. Mr. Convery, Algonquin's chief inspector in charge of ensuring "compliance with the contract and specifications," testified that he performed daily walking inspections of the construction site, which at times included the lay-down areas. Cnvy Dep. p. 47, 50. He stated that he had seen pipes being stored on two-by-fours on a "daily basis" in "all areas", including lay-down areas. *Id.* at pp. 50–51. In addition, Mr. Wright, inspector of welds for Algonquin, according to Boyette, was conducting the welding tests; he wrote out a report stating that Boyette tripped on a two-by-four that had some pipe stacked on it. Pl.Exh. E. In light of Mr. Convery's testimony and Mr. Wright's report, it is difficult to imagine how Algonquin could claim that it did not have knowledge of the location of the two-by-fours.

More difficult to determine is whether Algonquin exercised the requisite control over the premises. It is clear that under the contract, Dick was given responsibility for insuring workplace safety.[2] The testimony

2. Article XXIV provides, in relevant part:
 Contractor shall be responsible for developing, implementing, maintaining and supervising all safety programs in connection with the work and the site to the complete satisfaction of the Engineer. The Contractor is responsible for taking all reasonable safety precautions to prevent injury or death to persons or damage, including environmental, to property. These obligations extend to the protection of all employees on the Site and all other persons who

may be affected by the work in any way. Protection of property includes the Work and all materials and equipment to be incorporated into it, whether in storage on or off Site ... The Contractor shall ascertain and comply with all requirements to give notices and shall comply with all applicable laws, ordinances, rules, regulations, and lawful orders of any public authority bearing on the safety of persons or property or their protection from damage, injury or loss. The contractor shall ascer-

of Dick's representative, James Barrickman, confirms this. He stated that he was the "individual assigned to job safety" and that he and "everybody else who works for Dick" were responsible for job safety. Brk.Depo. p. 16, 71.

However, Algonquin's inspector, Pat Convery, testified that looking for potential safety problems was one of the functions that he performed in his daily inspections, "to the extent that it was required by the specifications." Cnvy Depo. p. 48. He noted that it was a "contractual requirement that the contractor maintain an orderly workplace, and if anything, to my knowledge, would not meet that specification, I would try to point it out, and above that, there is a general obligation to point out imminent hazards.... It would be routine to point out imminent hazards." *Id.* He also stated that he had the authority to stop the work if he felt there was an unsafe condition and that he had stopped work for safety reasons on prior occasions. *Id.* at 76–77, 85. As he put it, safety was one of his "concerns or job functions," and that it was "everyone's, really." *Id.* at 89.

■ While neither retention of inspection privileges nor a general power to supervise alone constitute control sufficient to impose liability (*see Ortiz v. Uhl*, 39 A.D.2d 143, 332 N.Y.S.2d 583 (4th Dep't), *aff'd*, 33 N.Y.2d 989, 353 N.Y.S.2d 962, 309 N.E.2d 425 (1974); *Ramos v. State of New York*, 34 A.D.2d 1056, 312 N.Y.S.2d 185 (3d Dep't 1970), *lv. denied*, 28 N.Y.2d 487, 322 N.Y.S.2d 1027, 270 N.E.2d 904 (1971)), the Third Department has found that where an owner had a "ubiquitous presence" and was "extensively" involved, it could have corrected or avoided the unsafe condition. *Shaheen v. I.B.M.*, 157 A.D.2d 429, 557 N.Y.S.2d 972, 975 (3d Dep't 1990) (IBM contractually retained the au-

thority to accept or reject finished work or stop work in progress, devised detailed construction and safety guidelines that the general contractor and the subcontractors were obligated to follow, and closely supervised and inspected the renovation.). *See also Baker v. Int'l Paper*, —— A.D.2d ——, 641 N.Y.S.2d 206, 208 (3d Dep't 1996).

There remains a fact issue as to whether Algonquin was so extensively involved in the project as to have the type of supervisory control to support liability under § 200. Similar to that involved in *Shaheen*, the contract at issue here provides that: "all employees and Subcontractors of Contractor engaged in the Work shall be subject to any rules and regulations promulgated by [Algonquin] from time to time for the safe, orderly, and efficient conduct of all Work or any other operations upon the Site." Alg.Exh. A, Sec. 3.9. The existence and extent of any such regulations is a material issue of fact. In addition, as in *Shaheen*, the Contract here gives Algonquin's engineer the right to reject work. (The Engineer can determine "whether all work done by Contractor has been performed in a good and workmanlike manner and in accordance with this Contact." If he does not approve the work, Dick is obliged to repair or replace it. *Id.* at Sec. 6.2. If Dick does not remedy its failure within five days, the company shall have the right to terminate the contract and hire someone else, *Id.* at Sec. 14.2, or to reject the work. *Id.* at Sec. 17.2.)

However, the contract also provides that "In no event shall the Company have control over or any responsibility for construction means, methods, techniques or procedures in connection with the Work, notwithstanding any of the rights and authority of the Company." *Id.* at Sec. 14.4. There is a dispute,

---

tain the requirements for and shall erect and maintain, as required by law and/or existing conditions, all reasonable safeguards for safety and protections, including but not limited to posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent property.

 \* \* \* \* \* \*

A responsible member of the Contractor's organization shall be designated in writing as the Contractor's safety officer ...

Alg.Exh. A, Contract, Article XXIV.

however, as to who controlled the location of the lay-down area. Mr. Convery, (Algonquin's representative), testified that Dick selected the lay-down site and the test site, Cnvy.Depo. p. 72; Mr. Barrickman, (Dick's representative), stated that it was Algonquin who did so. Brk.Depo. p. 22. Barrickman further testified that welders could set up their own testing area within the "given area." *Id.* at p. 31. Clearly these disagreements and this ambiguous evidence point to the existence of numerous issues of fact regarding the degree of control Algonquin exercised over the project. Thus, we deny Algonquin's motion for summary judgment under both the common law and § 200.

### B. *Section 241(6)*

■ Labor Law 241(6) provides:

All contractors and owners and their agents ... when constructing or demolishing buildings or doing any excavating in connection therewith, should comply with the following requirements: ... *all areas in which construction, excavation, or demolition work is being performed shall* be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The board may make rules to carry into effect the provisions of this subdivision ...

(McKinney 1006) (emphasis added).[3]

■ Algonquin initially urges that Boyette has not adequately stated a claim under § 241(6). Under § 241(6), a plaintiff cannot make only general allegations against a defendant but must allege specific violations of the industrial code. *Id.; Kaczmarek v. Bethlehem Steel Corp.*, 884 F.Supp. 768, 778 (W.D.N.Y.1995) ("[T]o ward off a motion for summary judgment a plaintiff proceeding under § '241(6) must adequately allege a defendant has violated one of the implementing regulations set forth by the Industrial Board of Appeals.") Here, Boyette has alleged that Algonquin has violated 12 N.Y.C.R.R. 23–1.7(e)(1) and (e)(2) (Tripping and other hazards—Working areas) and has thus met the specificity requirement.[4]

■ Third-party Defendant Dick has argued that even if Boyette has adequately pled violations of 23–1.7(e)(1) and (2) the facts of this case do not support a violation of this Rule. Rule 23–1.7 provides, in relevant part:

23–1.7 Protection from general hazards.

\* \* \* \* \* \*

(e) Tripping and other hazards (1) Passageways. All passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping. Sharp projections which could cut or puncture and person shall be removed or covered.

(2) Working areas. The parts of floors, platforms and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scat-

---

**3.** It is clear that Mr. Boyette is in the class of persons protected by the statute. As a person seeking employment at a construction site, he is "lawfully frequenting" the site. *DeFreece v. Penny Bag, Inc.*, 137 A.D.2d 744, 524 N.Y.S.2d 825, 826 (2d Dep't 1988), *citing Brennan v. M.L.P. Builders Corp.*, 262 N.Y. 464, 188 N.E. 21 (1933).

**4.** There has been some dispute as to whether Boyette has adequately pled a violation of the § 241(6). While Boyette does not allege in his complaint violations of specific Code sections, he does state that "the occurrence [fall]" was caused by "reason of the negligence and carelessness of Defendant ... in failing to conform to the requirements of the Labor Law of the State of New York." (Pl.Complaint ¶ 29). In his January 19, 1995, answers to Dick's interrogatories, he alleges *Dick* violated §§ (e)(1) and (e)(2) of 12 N.Y.C.R.R. 23–1.7. It was not until Boyette's memorandum of law in opposition to this motion, however, that he stated the particular Code Sections he alleges *Algonquin* violated.

Algonquin asserts that Boyette is required to have pled the specific allegations in his complaint. None of the cases cited specifically require this, however. They are either unspecific, *see Nunnenkamp v. Bay Point Associates*, 212 A.D.2d 585, 622 N.Y.S.2d 592, 593 (2d Dep't 1995), or deal with situations where specific allegations were not made even in the summary judgment papers, *Kaczmarek v. Bethlehem Steel Corp.*, 884 F.Supp. at 778, or were made for the first time on appeal, *Rojas v. County of Nassau*, 210 A.D.2d 390, 620 N.Y.S.2d 438, 440 (2d Dep't 1994). While Boyette properly should have stated his claims against Algonquin with the requisite particularity earlier, at this time he has properly presented this issue to the Court.

tered tools and materials and from sharp projections insofar as may be consistent with the work being performed.

12 N.Y.C.R.R. 23–1.7 (1996). Dick asserts that Boyette did not fall in a "passageway" and thus he cannot recover under subsection (e)(1). He next asserts that Boyette did not fall over "dirt", "debris", "scattered tools and materials" or "sharp projections" and thus cannot recover under subsection (e)(2) either.

Dick's arguments are convincing as to both subsections. Boyette has not alleged that the open area in which he fell was a passageway, and has therefore not stated a claim under § 23–1.7(e)(1).

Moreover, the two-by-four on which plaintiff tripped was not a "scattered" tool or material as contemplated by § 23–1.7(e)(2), but obviously was deliberately placed in proper position to support pipe and keep it off the ground where it would be likely to become wet and rust. The only case Dick cites to support his position is *Adams v. Glass Fab., Inc.*, 212 A.D.2d 972, 624 N.Y.S.2d 705 (4th Dep't 1995). In *Adams*, the Fourth Department found that where plaintiff had fallen over wire mesh laid down in the area where concrete was to be poured, the mesh was an integral part of the part of the floor to be constructed and thus not the type of hazard encompassed by (e)(2). *Id.*, 624 N.Y.S.2d at 707–708. Although the two-by-fours in this case were not, and might never be an "integral" part of the structure itself under *Adams*, they certainly cannot be characterized as "scattered" materials within the contemplations of § 23–1.7(e)(2).

Since we have determined that neither § 23–1.7(e)(1) or (e)(2) applies, it is unnecessary to consider Algonquin's assertion that the accident did not occur in an "area in which construction, excavation, or demolition work is being performed" because it occurred in the welding test area during the performance of a welding test.

Therefore, we grant Algonquin's motion for summary judgment and dismiss the claim under Labor Law § 241(6).

## III. *DICK'S OBLIGATION TO INSURE, INDEMNIFY AND DEFEND ALGONQUIN UNDER THE CONTRACT*

Algonquin makes several arguments in support of its motion for summary judgment against Dick. First, that by neglecting to answer Algonquin's Requests for Admission, Dick has admitted its obligation to defend, indemnify and insure Algonquin. Second, that regardless of Dick's admission, as a matter of law, the contract obligates Dick to defend, indemnify, and procure insurance for Algonquin.

Algonquin is probably correct in its assertion that as a result of Dick's failure to answer its requests for admission, these obligations are deemed admitted for the purposes of this action. Alg.Exh. D, Request for Admission; FED.R.CIV.P. 36. It is not necessary for us to decide this issue, however, because whether or not Dick has admitted his obligations by failing to respond to request numbers 3 and 4, the contractual terms indisputably require Dick to indemnify and insure Algonquin.

In regard to indemnification, the contract provides that:

> Contractor shall release, indemnify, defend with counsel acceptable to Company, and save harmless Company ... from and against any and all liabilities, suits, causes of action, losses, costs and expenses (including attorney's fees), arising out of or in connection with any claim for damages or legal imposition of liability due to loss of life or property or injury or damage to any person or property of any person ... including the parties hereto and their respective officers, agents and employees, and from any and all liabilities, suits, actions, losses, costs and expenses (including attorney's fees) of any other kind caused by or arising directly or indirectly out of the performance of or failure to perform any of the Work covered by this Contract.

Exh. A, Contract, Sec. 9.

These terms are unambiguous. However, New York General Obligations Law 5–322.1 prohibits agreements exempting owners and contractors from liability for

their own negligence relative to the construction, alteration, repair or maintenance of a building or structure.[5] (McKinney 1996); *see also Brown v. Two Exchange Plaza Partners,* 146 A.D.2d 129, 539 N.Y.S.2d 889 (1st Dep't 1989), *aff'd,* 76 N.Y.2d 172, 556 N.Y.S.2d 991, 556 N.E.2d 430 (1990). Since we are unable to determine as a matter of law that Algonquin was not negligent, we cannot determine that it is entitled to indemnity under Section IX of the contract. However, we note that since a party can be indemnified for negligence of third parties, *Lawlor v. MFD 1251 Americas Corp.,* 93 Civ. 1862, 1995 WL 110090 (S.D.N.Y.1995), *citing Brown,* 539 N.Y.S.2d at 889, it is entitled under the Contract to indemnity against liability for the negligence of Dick or anyone else.[6]

Regarding insurance, Article X of the contract provides:

> *Sec. 10.1* Contractor shall carry, at its own expense, *with insurance companies acceptable to Company* and which are authorized to do business in the state or states in which work is to be performed by Contractor hereunder, the following insurance with limits not less than indicated.

* * * * * *

> B. GENERAL (PUBLIC) LIABILITY
> BODILY INJURY LIMIT OF LIABILITY
> Each Occurrence $1,000,000
>
> PROPERTY DAMAGE
> Each Occurrence $1,000,000
> Aggregate, if any $5,000,000

This insurance coverage is to afford subsurface damage protection and shall not exclude coverage for explosions or collapses. *The insurance policy hereunder shall include coverage for all liability for which the Contractor has agreed to indemnify, save harmless, or defend the Company under this Agreement and shall provide that if suit is brought against the Company under this Agreement, arising out of work to be performed under this Agreement, and if there is reasonable doubt whether there is coverage, the Contractor's insurer will nevertheless defend the suit pending investigation of the matter.*

. . . .

> *Sec. 10.2 Such insurance shall be written to protect Contractor and Company against liability from claims which* may arise out of or *result from Contractor's operations under the Contract and for which the Contractor may be liable,* whether such operations be by the Contractor or by a Sub–Contractor or by a Sub-contractor or by anyone directly employed by any one of them, or by

---

**5.** Section 5–322.1 provides in relevant part:

5–322.1 **Agreements exempting owners and contractors from liability for negligence void and unenforceable; certain cases**

1. *A covenant, promise, agreement* or understanding in, or in connection with or collateral to a contract or agreement *relative to the construction,* alteration, repair or maintenance of a building, structure ... *purporting to indemnify or hold harmless the promisee against liability for damage* arising out of bodily injury to persons or damage to property *contributed to, caused by or resulting from the negligence of the promisee,* his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and *is void and unenforceable; provided that this section shall not affect the validity of any insurance contract,* worker's compensation agreements or other agreement issued by an admitted insurer. *This subdivision shall not preclude a promisee requiring indemnification for damages* arising our of bodily injury to persons or damage to property *caused by or resulting from the negligence of a party other than the promisee, whether or not the promisee is partially negligent.* (McKinney 1996) (emphasis added).

**6.** *See also DeFilippis Crane Serv. v. Joannco Contracting Corp.,* 132 A.D.2d 517, 517 N.Y.S.2d 259, 261 (2d Dep't 1987); *Magrath v. J. Migliore Constr. Co.,* 139 A.D.2d 893, 527 N.Y.S.2d 892 (4th Dep't 1988). We note there appears to be some uncertainty on this point. The Southern District has held in *Lawlor* that indemnification agreements that purport to indemnify a promisee against its own negligence are void only *where the promisee is found negligent, to the extent of that negligence.* Lawlor at * 3. However, the New York Court of Appeals has broadly stated, without qualification, that such agreements are "void and unenforceable." *Kinney v. G.W. Lisk, Co., Inc.,* 76 N.Y.2d 215, 557 N.Y.S.2d 283, 285, 556 N.E.2d 1090, 1092 (1990). Thus, it is unclear whether Algonquin would be able to be indemnified for the negligence of third parties were Algonquin to be found to be partially negligent. This point is likely not critical, however, since we find, *infra,* that regardless, Dick was required to insure Algonquin.

anyone for whose acts any of them may be liable.

Algonquin Exh. A (emphasis added).

 Algonquin is correct in its assertion that even if it is found negligent, and is thus barred from being fully indemnified for its conduct, this does not prevent Dick from obtaining insurance coverage for Algonquin. *See Lawlor,* 1995 WL 110090, at *3 ("New York courts continually have construed agreements to procure insurance coverage as extending to all liability arising out of the activities contemplated by the agreement between the parties, including liability based on the promisee's own negligence.") (citations omitted). Dick argues, however, that the contract does not contemplate that Dick obtain insurance for Algonquin, but simply that it obtain insurance for itself, because it nowhere states that Algonquin is to be named an "additional insured." We find this argument to be without merit.[7]

 "In the absence of ambiguous contract language, construction of a contract is a matter of law." *Connelly & Blitzer Realty, Inc. v. Elwyn,* 111 A.D.2d 555, 489 N.Y.S.2d 427, 428 (3d Dep't 1985); *Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992). It is axiomatic that the objective of contract interpretation is to give effect to the parties' clearly expressed intentions. *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.,* 906 F.2d 884, 889 (2d Cir.1990). Moreover, it is a cardinal principal of contract construction that the document should be read to give effect to all its provisions and to render them consistent with each other. Restatement (Second) of Contracts §§ 202(5), 203(a) and Comment b.

*Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995).

 Sections 10.1 and 10.2 clearly require the insurance to be written to protect Algonquin ["the Company"] by an insurance company acceptable to Algonquin. The certificate of insurance clearly satisfies Dick's obligation to insure Algonquin. It contains, in a box entitled "Description of Operations/Locations/Vehicles/Special Items," the following language:

Algonquin Gas Job

Coverage contemplates requirements set forth in Article X, Section 10.1 and 10.2 of the contract specifications.

DeSimone Dec., Exh. B.[8] Thus, we cannot understand why Dick argues that it had no obligation to insure Algonquin. Dick was clearly obligated to insure Algonquin, and has in fact done so. *See* Certificate of Insurance, *Id.* Thus it has discharged its obligations under Article X of the contract.

For the above reasons, we partially grant Algonquin's motion for summary judgment against Dick, finding that Dick is contractually bound to indemnify Algonquin against all damages resulting from the project that were not caused by Algonquin's own negligence. In addition, we find that Article X of the contract binds Dick to obtain insurance for Algonquin against any liability "arising out of or resulting from" Dick's operations under the contract, as well as for any liability "for which Dick has agreed to indemnify, save harmless, or defend" Algonquin. By obtaining the Certificate of Insurance, Dick has fulfilled this obligation.

**7.** Dick cites two cases in support of its proposition that if a contract does not mention the term "additional insured," it does not bind the promisor to insure the promisee. *See American Home Assurance Co. v. Mainco Contractor Corp.,* 204 A.D.2d 500, 611 N.Y.S.2d 305 (2d Dep't 1994), and *Kirkpatrick v. Diversified Sports. Inc.,* 216 A.D.2d 892, 629 N.Y.S.2d 152 (4th Dep't 1995). In *American,* however, the Second Department's full statement was that the contract "did not provide that the plaintiffs be named as insureds or as additional insureds, *or that the policy be subject to the plaintiffs' approval regarding the adequacy of protection." American,* 611 N.Y.S.2d at 306. (Dick failed to include this part of the

holding in its summation of the case.) Here, the contact *does* require Algonquin's approval. While the *Kirkpatrick* court did find no obligation to procure insurance, stating only that the policy did not require the plaintiff to be named as insured or additional insured, it did not reproduce any of the actual contract language. *Kirkpatrick,* 629 N.Y.S.2d at 153. Without any of the relevant language, we find the case to be unhelpful.

**8.** Algonquin correctly points out that the Certificate of Insurance has no field for adding additional insureds.

## CONCLUSION

Thus, we grant Defendant Algonquin and Third–Party Defendant Dick's motion for summary judgment under New York Labor Law § 241(6), but deny the motion as to the claim under New York Labor Law § 200 and the common law. We also deny Algonquin's motion for summary judgment regarding Dick's obligation to indemnify Algonquin, pending a jury determination regarding any negligence by Algonquin. Lastly, we grant Algonquin's motion for summary judgment regarding Dick's obligation to insure Algonquin, but find that obligation was discharged when Dick obtained the Certificate of Insurance.

SO ORDERED.